J.S52013/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALLEN GORE, | : | |
| | : | |
| Appellant | : | No. 1411 EDA 2013 |

Appeal from the PCRA Order April 19, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division No(s).: CP-51-CR-0905541-2003

BEFORE: GANTMAN, P.J., ALLEN, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                **FILED NOVEMBER 24, 2014**

Appellant, Allen Gore, appeals from the order denying, without a hearing, his first Post Conviction Relief Act (PCRA)[1] petition entered in the Philadelphia County Court of Common Pleas. This Court previously vacated the PCRA court's earlier order reinstating Appellant's direct appeal rights and remanded for further proceedings.[2] Appellant presently claims his prior counsel were ineffective for failing to preserve an appellate challenge to the

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

[2] **Commonwealth v. Gore**, 2981 EDA 2011 (unpublished memorandum) (Pa. Super. Aug. 2, 2012).

sufficiency of the evidence and a challenge the weight of the evidence. We affirm.

Appellant was found guilty but mentally ill of, *inter alia*, first-degree murder[3] for killing his father, William Gore ("decedent"), on August 18, 2002.[4] On that day, Appellant's mother left Appellant and the decedent at their home at 3:00 p.m. When she returned at 6:00 p.m., the front door was locked, and Appellant opened the door for her after she called through the mail slot. She then discovered the decedent bleeding and nonresponsive in his bed. Appellant's mother telephoned her other son to come over and attempted to resuscitate the decedent. Appellant, in the meantime, left the home. Police officers responded to the scene and found an aluminum baseball bat under Appellant's bed. Appellant's mother told the officers that Appellant was angry at the decedent for letting their dog out earlier in the day.

At 7:30 p.m., Appellant entered the Philadelphia Police Administration building and told the officer at the front desk he wanted to turn himself in because he struck his father with a baseball bat. At trial, the officer testified that Appellant told him the decedent "came up to him and said that he was

---

[3] 18 Pa.C.S. §§ 314, 2502(a).

[4] The decedent was eighty-three years old and suffered from amyotophic lateral sclerosis ("ALS"). He drank alcohol on the morning before Appellant attacked him and was carried to his upstairs bedroom by Appellant's mother and Appellant's brother.

the devil." N.T., 10/28/04, at 134-35, 138. The officer called for assistance. One of the responding officers testified that Appellant reported he beat the decedent after the decedent called him the devil and then put the baseball bat he used under his bed. Appellant was taken to the homicide unit for interrogation.

Appellant waived his **Miranda**[5] rights and gave a statement that was transcribed by the interrogating detective. Appellant reported he was being treated for "[b]ipolar, manic depressive schizophrenia, psycho affective psychosis." N.T, 10/29/04, at 23. According to Appellant, after the decedent was diagnosed with ALS, the decedent called himself the devil and Appellant Jesus Christ. **Id.** at 26. Appellant stated the decedent stuck needles in Appellant's eyes at night and used mental telepathy against him. **Id.** Appellant prayed every night for "God to get it over with." **Id.** at 26.

Appellant told the interrogator that that on the morning of the killing, he called the decedent a "dickhead" after the decedent let the dog out of the home. **Id.** at 24. Later that day, the decedent came downstairs and "said you know I'm the devil, right?" **Id.** at 25. The decedent spat and laughed at Appellant. Appellant went to his room and noticed he had money in his pockets. He then left the home and purchased the baseball bat from a sporting goods store. When he returned to the home, he went back to his room, listened to music, and "wrote something in [his] book[.]" **Id.** He

---

[5] **Miranda v. Arizona**, 384 U.S. 436 (1966).

then hit decedent once on the head and twice in the back. *Id.* He wiped off the bat and his hands with a towel. *Id.* at 26.

Appellant was found incompetent to stand trial, and the trial court entered commitment orders from September 24, 2002, to June 3, 2003. Thereafter, a preliminary hearing was held on September 3, 2003, and a jury trial on the charges of homicide and related offenses commenced on October 28, 2004.

At trial, Appellant raised an insanity defense. Appellant's mother testified for the defense and described Appellant's social and medical background, which included: (1) having behavioral problems beginning when he was fifteen years old; (2) watching his friend killed in a robbery, (3) destroying the interior of the home, which, on one occasion, resulted in a stand-off with SWAT officers, (4) being voluntarily and involuntarily committed for mental health reasons on numerous occasions, and (5) being shot after claiming he was the devil and engaging in an altercation with another individual. Appellant's mother stated he was not taking his medications before he killed the decedent.

The defense also called Dr. Pogos Voskanian, a forensic psychiatrist. Dr. Voskanian noted Appellant was found incompetent after killing his father and committed to a mental health institution before trial. The doctor indicated that Appellant suffered "schizophrenia of paranoid type and post-traumatic stress disorder" and met clinical criteria for temporal lobe

epilepsy. N.T., 11/1/04, at 49-50. Dr. Voskanian opined Appellant was incapable of differentiating right and wrong at the time of the incident given Appellant's belief the decedent was the devil. *Id.* at 51.

In rebuttal, the Commonwealth called a forensic psychiatrist, Dr. John O'Brien. Dr. O'Brien conceded that Appellant had trouble conforming his conduct to the law. He opined, however, that Appellant's actions—*i.e.*, locking the front door, killing the decedent, wiping blood from the bat and his hand, hiding the bat under his bed, and then turning himself in to police—evinced his knowledge that the killing was wrong. *Id.* at 175-76.

The PCRA court summarized the remaining procedural history of this case.

> On November 2, 2004, following a jury trial before the Honorable Jane Cutler Greenspan, [Appellant] was found guilty but mentally ill of one count of murder of the first degree (18 Pa.C.S. § 2502(a)), and one count of possessing an instrument of crime ("PIC") (18 Pa.C.S. § 907(a)). The Court immediately imposed the mandatory sentence of life in prison for the murder charge (18 Pa.C.S. § 1102(a)(1) & 42 Pa.C.S. § 9727(a)) and a concurrent sentence of one to two years incarceration for the PIC charge. No post-sentence motions were filed. On December 4, 2004, [Appellant] filed a Notice of Appeal. On March 15, 2005, [Appellant's] appeal was dismissed due to the defense attorney's failure to file a docketing statement, pursuant to Pa.R.A.P. [ ]3517. [Appellant] was represented at trial and on direct appeal by James Gross, Esquire.
>
> On April 20, 2006, [Appellant] filed a *pro se* petition pursuant to the Post-Conviction Relief Act ("PCRA"). [Appellant] filed an additional *pro se* PCRA petition on May 3, 2006. On June 20, 2006, Gary Server, Esquire, was appointed to represent [Appellant]. On September 27,

2006, Mr. Server filed an Amended PCRA Petition on behalf of [Appellant], requesting reinstatement of [Appellant's] appellate rights *nunc pro tunc*. Judge Greenspan granted the petition on October 6, 2006, reinstating [Appellant's] right to appeal. [Appellant] filed a Notice of Appeal on October 26, 2006, and raised claims based on the weight and sufficiency of the evidence. On November 1, 2007, the Superior Court affirmed [Appellant's] judgment of sentence, finding that [his] weight of the evidence claim was waived because it was not raised in the trial court, and that [his] sufficiency of the evidence claim was waived both because the necessary notes of testimony from the original trial were not transmitted as part of the record, and due to inadequate development of the claim in [his counseled] appellate brief. [***Commonwealth v. Gore***, 3128 EDA 2006 (unpublished memorandum) (Pa. Super. Nov. 1, 2007). Appellant's] Petition for Allowance of Appeal to the Supreme Court was denied on April 16, 2008. [***Commonwealth v. Gore***, 678 EAL 2007 (Pa. Apr. 16, 2008)]

[Appellant] filed a third *pro se* petition on June 17, 2008. As Judge Greenspan had retired, [Appellant's] PCRA was reassigned to the Honorable Renee Cardwell Hughes. On August 6, 2009, Lee Mandell, Esquire, was appointed to represent [Appellant]. On January 26, 2010, Mr. Mandell filed an Amended PCRA Petition on behalf of [Appellant], in which he sought the right to file a second direct appeal *nunc pro tunc*. On July 5, 2011, after Judge Hughes's retirement from the bench, [Appellant's] PCRA was reassigned to the undersigned [PCRA] judge. On September 19, 2011, this Court granted [Appellant's] Amended Petition and ordered that [Appellant's] right to a direct appeal be reinstated.

On August 2, 2012, the Superior Court [vacated the PCRA order granting the direct appeal *nunc pro tunc*. ***Gore***, 2981 EDA 2011, at 9.] The Superior Court remanded the matter to the PCRA Court to "conduct its analysis of Appellant's claims pursuant to the strictures of the PCRA." [***Id.*** at 9].

On November 14, 2012, Mr. Mandell filed a Supplemental PCRA Petition ("Amended Petition") raising

one claim of trial counsel ineffectiveness and one claim of appellate counsel ineffectiveness. Amended Petition at ¶¶ 8(a)-(b). On February 15, 2013, after reviewing [Appellant's] PCRA Petition and the Commonwealth's Motion to Dismiss, this Court ruled that the claims set forth in [Appellant's] petition were without merit. On that day, pursuant to Pa.R.Crim.P. 907, the Court issued notice of its intent to dismiss the petition without a hearing ("907 Notice"). On February 20, 2013, [Appellant] mailed a letter to the PCRA Court that contained a litany of complaints, none of which was germane to the PCRA Petition pending before the Court. On April 5, 2013, the Court entered an order dismissing [Appellant's] PCRA Petition.

PCRA Ct. Op., 7/16/13, at 1-3 (footnote omitted). This appeal followed.

Appellant presents the following question for review:

Did the Honorable PCRA Court err when it denied [Appellant's] Amended PCRA Petition and Supplemental Amended PCRA Petition without a hearing, but where the [Appellant] pled, and would have been able to prove, that he was entitled to relief as the result of ineffective assistance of trial counsel and appellate counsel?

Appellant's Brief at 3.

Appellant first argues that prior appellate counsel was ineffective for failing to brief a challenge to the sufficiency of the evidence in light of his insanity defense.[6] He asserts "if this issue had been properly briefed and

---

[6] As the PCRA court noted, Appellant's Rule 1925(b) statement set forth a challenge to the sufficiency of the evidence sounding in direct error rather than ineffective assistance of counsel. We agree with the court's conclusion that a direct claim challenging the sufficiency of the evidence is waived under the PCRA. *See* 42 Pa.C.S. § 9544(b). The court also opined that Appellant's challenge could be considered within the framework of an ineffectiveness claim and addressed it as such. PCRA Ct. Op. at 6. We decline to find waiver based on a defective Rule 1925(b) statement and

raised in the Superior Court . . . , the Superior Court most likely would have granted [him] an arrest of judgment and, hence, [he] has been grossly prejudiced." *Id.* at 17. No relief is due.

The principles governing our review are

> well settled: "In addressing the grant or denial of post-conviction relief, an appellate court will consider whether the PCRA court's conclusions are supported by record evidence and are free of legal error." To be entitled to PCRA relief, a petitioner must establish, by a preponderance of the evidence, his conviction or sentence resulted from one or more of the errors found in 42 Pa.C.S. § 9543(a)(2) . . . .
>
> . . . To be entitled to relief on an ineffectiveness claim, [a petitioner] must prove the underlying claim is of arguable merit, counsel's performance lacked a reasonable basis, and counsel's ineffectiveness caused him prejudice. Prejudice in the context of ineffective assistance of counsel means demonstrating there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. . . . Failure to establish any prong of the test will defeat an ineffectiveness claim.

***Commonwealth v. Keaton***, 45 A.3d 1050, 1060-61 (Pa. 2012) (citations and footnote omitted). Moreover, "[a] PCRA petitioner is not entitled to an evidentiary hearing as a matter of right, but only where the petition presents genuine issues of material fact. A PCRA court's decision denying a claim without a hearing may only be reversed upon a finding of an abuse of discretion." *Id.* at 1094 (citations omitted). This Court may affirm if there

---

review the trial court's consideration of his claim based on prior appellate counsel's alleged ineffectiveness.

is any basis on the record to support the PCRA court's action.
***Commonwealth v. Heilman***, 867 A.2d 542, 544 (Pa. Super. 2005).

The Pennsylvania Supreme Court summarized the legal principles underlying a verdict of guilty but mentally ill.

> [A] verdict of guilty but mentally ill is authorized by Section 314 of the Crimes Code, as follows:
>
> **(a) General rule.—**A person who timely offers a defense of insanity in accordance with the Rules of Criminal Procedure may be found "guilty but mentally ill" at trial **if the trier of facts finds, beyond a reasonable doubt, that the person is guilty of an offense, was mentally ill at the time of the commission of the offense and was not legally insane at the time of the commission of the offense**.
>
> *      *      *
>
> **(c) Definitions.—**For the purposes of this section and 42 Pa.C.S. § 9727 (relating to disposition of persons found guilty by mentally ill):
>
> > (1) "Mentally ill." One who as a result of mental disease or defect, lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.
> >
> > (2) "Legal insanity." At the time of the commission of the act, the defendant was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if he did know it, that he did not know he was doing what was wrong.
>
> 18 Pa.C.S. § 314. . . . Section 314(a) does not impose a burden of proof concerning a defendant's mental illness on either party, but rather, is implicated where an insanity

defense fails but evidence of the defendant's mental illness nevertheless "preponderates." The insanity defense is provided for in Section 315 of the Crimes Code, as follows:

> **(a) General Rule.**—The mental soundness of an actor engaged in conduct charged to constitute an offense shall only be a defense to the charged offense when the actor proves by a preponderance of the evidence that the actor was legally insane at the time of the commission of the offense.
>
> **(b) Definition.**—For purposes of this section, the phrase "legally insane" means that, at the time of the commission of the offense, the actor was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if the actor did know the quality of the act, that he did not know that what he was doing was wrong.

18 Pa.C.S. § 314.

*Commonwealth v. Rabold*, 951 A.2d 329, 330-31 (Pa. 2008) (some citations and footnote omitted) (emphasis added).

The initial burden of establishing an insanity defense is on the defendant, but once raised, the Commonwealth may rebut the claim by proving the defendant's sanity. *See Commonwealth v. Yasipour*, 957 A.2d 734, 739 (Pa. Super. 2008). The Commonwealth can establish "sanity not only by psychiatric testimony but also by lay testimony which shows that he or she knew the nature and quality of the act committed and knew that what had been done was wrong." *Id.* (citation omitted).

We are also mindful that

> the standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at

trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof [of] proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Lehman*, 820 A.2d 766, 772 (Pa. Super. 2003) (citations omitted). "Furthermore, it is within the factfinder's right to disbelieve an insanity defense[.]" *Yasipour*, 957 A.2d at 739 (citation omitted).

Instantly, we agree with Appellant that he presented sufficient evidence to raise an insanity defense. However, the Commonwealth presented rebuttal expert evidence regarding Appellant's mental state at the time of the incident. Dr. O'Brien testified that even if Appellant was delusional at the time of the killing, he was capable of forming a specific intent to kill and differentiating right and wrong. The Commonwealth's rebuttal evidence was not so weak or inconclusive that no probability of fact regarding Appellant's sanity could be drawn. Thus, the jury was entitled to

disbelieve Appellant's evidence and credit the Commonwealth's rebuttal evidence, and an appellate court would not reweigh the evidence when considering Appellant's underlying sufficiency argument. *See Yasipour*, 957 A.2d at 739; *Lehman*, 820 A.2d at 772. Accordingly, we agree with the PCRA court that Appellant failed to establish arguable merit to his claim that prior appellate counsel was ineffective for failing to preserve a challenge to the sufficiency of the evidence.

Appellant next argues the PCRA court erred when considering his claim that trial counsel was ineffective for failing to challenge the weight of the evidence. He contends that trial counsel's failure to preserve a weight of the evidence challenge in the trial court resulted in waiver of a meritorious issue and that he is presently entitled to PCRA relief. *See* Appellant's Brief at 18-20. We disagree.

The principles governing a challenge to the weight of the evidence are well settled.

> A verdict is against the weight of the evidence "only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice." A weight of the evidence claim is primarily directed to the discretion of the judge who presided at trial, who only possesses "narrow authority" to upset a jury verdict on a weight of the evidence claim. Assessing the credibility of witnesses at trial is within the sole discretion of the fact-finder. A trial judge cannot grant a new trial merely because of some conflict in testimony or because the judge would reach a different conclusion on the same facts, but should only do so in extraordinary circumstances, "when the jury's verdict is so contrary to the evidence as to shock one's sense of

> justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." . . .

***Commonwealth v. Blakeney***, 946 A.2d 645, 652-53 (Pa. 2008) (citations omitted).

"[T]he role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" ***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (citation omitted). An appellate court reviews the exercise of discretion by the trial court, "not . . . the underlying question of whether the verdict is against the weight of the evidence." ***Id.*** (citation omitted).

Instantly, the parties presented divergent expert opinions on Appellant's ability to form the specific intent to kill and appreciate the wrongfulness of his actions. The defense and Commonwealth experts attached different significance to Appellant's actions before and after killing the decedent and reached opposite conclusions. We are mindful that a mere conflict in the evidence does not give rise to a meritorious weight of the evidence challenge. Under the circumstances of this case, however, we cannot conclude that a challenge to the weight of the evidence lacked arguable merit.

Nevertheless, after review of the record, we are not convinced that Appellant's expert evidence was of such greater weight than the Commonwealth's expert evidence that the jury's decision, to credit the

- 13 -

Commonwealth's evidence and find Appellant was not legally insane, denies justice or shocks the court's conscience. **See Clay**, 64 A.2d at 1055. Accordingly, we cannot conclude that Appellant demonstrated prejudice, *i.e.* that but for trial counsel's failure to preserve this claim, there was a reasonable possibility that a new trial would have been awarded. Thus, we concur with the PCRA court's decision to deny Appellant's instant ineffectiveness claim.

Because our review reveals no genuine issues of fact to be addressed in an evidentiary hearing, we also agree with the PCRA court's determination that further proceedings were not required to consider Appellant's claims. **See Keaton**, 45 A.3d at 1094.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/24/2014