J-S78028-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MICHAEL T. DURDEN | |
| Appellant | No. 58 MDA 2014 |

Appeal from the Judgment of Sentence December 16, 2013
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0001702-2013

BEFORE:  GANTMAN, P.J., JENKINS, J., and MUSMANNO, J.

MEMORANDUM BY JENKINS, J.:                **FILED JANUARY 21, 2015**

Appellant Michael Durden appeals from the judgment of sentence entered by the York County Court of Common Pleas following his jury trial convictions for robbery,[1] person not to possess a firearm,[2] and firearms not to be carried without a license.[3]  We affirm.

The trial court found the following facts.[4]

> On the night of October 26, 2012, the Dollar General in the North York Shopping Plaza was robbed at gunpoint by a

---

[1] 18 Pa.C.S. § 3701(a)(1)(ii).

[2] 18 Pa.C.S. § 6105(a)(1).

[3] 18 Pa.C.S. § 6106(a)(1).

[4] The trial court found the facts before a copy of the transcript was made available.  It based the facts upon its notes.  The citations to the record have been supplied by this Court.

black male. Two employees, Christie Clark and Terrance Generate, were working at the Dollar General that night around 8:30 p.m. [N.T., 11/13-14/2013, at 68-69.] Ms. Clark explained that not many customers were in the store at that hour because the store closed at 9 p.m. [*Id.*, at 69.] Both Ms. Clark and Mr. Generate testified that one customer caught [their] attention as he entered the store because he was wearing sunglasses when it was completely dark outside. [*Id.*, at 70, 103-04].

When the man wearing the sunglasses was the only one left in the store, he approached Mr. Generate and showed him a gun in his waistband. [N.T., 11/13-14/2013, at 75-76, 104-05.] He and Mr. Generate then headed to the front of the store, and the perpetrator made contact with Ms. Clark. [*Id.*, at 71, 75-76, 107.] The perpetrator then took both employees to the back of the store, and he had Ms. Clark tie up Mr. Generate with a shoelace. [*Id.* at 71-72, 75-76, 107.] The man then put Mr. Generate in the bathroom and took Ms. Clark back to the register and safe at the front of the store. [*Id.*, at 72, 75-76, 108.] The man told Mr. Generate to stay in the bathroom or things would not be good for either one of the employees. [*Id.*, at 75-76, 108.] Both employees took this as a threat. [*Id.*, at 76, 108.] At the front of the store, Ms. Clark emptied the register and the safe, and she gave the money to the armed robber. [*Id.*, at 76]. After getting the money, the man tied up Ms. Clark in the back bathroom with Mr. Generate, and he told them to stay there for five minutes. [*Id.*, 76-77, 108.] The two employees complied with this request, and when they exited the bathroom, the armed robber was gone. [*Id.*, 77, 108-09.]

On December 22, 2012, the manager of the Dollar General recognized a similar man entering the store. [N.T., 11/13-14/2013, at 113-15.] The manager had reviewed the security footage multiple times. [*Id.*, at 113-15.] The manager approached Mr. Generate, who happened to be working that night as well, and asked him if the man who just entered was the same man who robbed the store in October. [*Id.*, at 114.] This man also wore sunglasses into the store when it was completely dark outside, and he had the same skin tone as the man who robbed the store. [*Id.*, at 113-16.] Once Mr. Generate informed the

manager that he was very positive the man was the armed robber, the manager got the man's license plate, and Mr. Generate contacted the police. [*Id.*, at 117.]

Detective Haller, the case investigator, traced the license plate to a residence near the Dollar General. [N.T., 11/13-14/2013, at 124, 132-34.] The vehicle was registered to Paula Butler, who is [Appellant's] girlfriend. The residence also belonged to Paula Butler. [*Id.*, at 134.] Mr. Haller went to the address and made contact with a person on the second floor. [*Id.*] After shown a still shot of the security footage, that person identified [Appellant] as one of the two men who entered the store on December 22, 2012. [*Id.*] Mr. Haller then contacted Ms. Clark and put together a photo lineup for her to review. [*Id.*, at 85, 135.] On January 8, 2013, she identified [Appellant] in that lineup as the man who robbed the store in October. [*Id.*, at 86, 135.]

When Detective Haller finally made contact with [Appellant], Mr. Haller asked him why he was wearing sunglasses in the store when it was completely dark outside. [N.T., 11/13-14/2013, at 137.] [Appellant] explained that he had problems with his eyes. [*Id.*] When talking with [Appellant], Mr. Haller noticed [Appellant's] mouth and how he spoke. [*Id.*, at 137-38.] [Appellant's] mouth, teeth and speech matched Ms. Clark's observations during the robbery. [*Id.*, at 137-38.] Ms. Clark had told Detective Haller that the armed robber's teeth were very distinctive because one of his teeth was chipped. [*Id.*, at 137-38.[5]] After executing a search warrant on the residence of Paula Butler, Detective Haller found gloves that were very similar to those used in the robbery. [*Id.*, at 139.] No other evidence of the crime was found at the residence. [*Id.*, at 141.] Detective Haller then filed charges against [Appellant]. [*Id.*, at 142.]

_____

[5] Detective Haller testified that "[Appellant] actually has – it's not a cracked tooth, but the way he holds his mouth, the incisor is pretty much shown and it looks like a cracked tooth." N.T., 11/13/2014, at 137-38.

At the preliminary hearing in March of 2013, Ms. Clark testified that she was not 100% certain that [Appellant] was the person who robbed the Dollar General. [N.T., 11/13-14/2013, at 87.] She testified that she was fairly certain that the man she identified in the photo lineup was the armed robber. [*Id.*] Ms. Clark testified that she needed to see the teeth to be more confident. [*Id.*] Detective Haller obtained a search warrant to obtain [Appellant's] DNA and photos of his mouth/teeth. [*Id.*, at 143.] Ms. Clark then explained that she was shown what Detective Haller described as the suspect's teeth. [*Id.*, at 88.] The photo only depicted [Appellant's] teeth, and Ms. Clark was shown multiple pictures. [*Id.*, at 143.] Ms. Clark informed Mr. Haller that the mouth/teeth in the picture was the same mouth of the man who robbed the Dollar General. [*Id.*, at 88, 143.] Ms. Clark further testified that she was positive it was the same mouth. [*Id.*, at 88-89.] She had focused on the armed robber's mouth because he was wearing sunglasses and her focus was on his mouth. [*Id.*, at 87.]

Paula Butler, [Appellant's] girlfriend, also testified during trial. [N.T., 11/13-14/2013, at 163.] She explained that [Appellant] had been with her all night on October 26, 2012, and he could not have robbed the Dollar General. [*Id.*, at 163-65.] She testified that she had previously pled guilty to a retail theft charge. [*Id.*, at 163.] She testified that she and [Appellant] had gone shopping that night and did not return home until around 9:10 p.m. [*Id.*, at 164-65, 167.] She told the Jury that they went to Ross (in East York), 5 Below, and Dicks Sporting Goods. [*Id.*, at 165.] Detective Haller testified that Ms. Butler told him they had gone to Wal-Mart in the west York area that night. [*Id.*, at 182.]

Opinion in Support of Order Pursuant to Rule 1925(a) of the Rules of Appellate Procedure, 3/27/2014, at 2-4.

On November 14, 2013, a jury convicted Appellant of robbery, person not to possess a firearm, and firearms not to be carried without a license. On December 16, 2013, the court sentenced Appellant to an aggregate term

of 11 to 22 years' imprisonment. Appellant filed post-sentence motions, which the court denied on December 23, 2013. On December 31, 2013, Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant raises the following issues on appeal:

[1.] Was the evidence presented at Appellant's trial sufficient to convict him of robbery and related charges when he was never sufficiently identified at trial by the victims in his case?

[2.] Was the jury's verdict against the weight of the evidence submitted by the Commonwealth in Appellant's case?

Appellant's Brief at 3.

We apply the following standard when reviewing a sufficiency of the evidence claim: "[W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Lehman*, 820 A.2d 766, 772 (Pa.Super.2003), *affirmed*, 582 Pa. 200, 870 A.2d 818 (2005) (quoting *Commonwealth v. DiStefano*, 782 A.2d 574 (Pa.Super.2001)). When we apply this standard, "we may not weigh the evidence and substitute our judgment for the fact-finder." *Id.*

"[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Id.* Moreover, "[a]ny doubts regarding a defendant's guilt may be resolved by the fact-finder

unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Id.* "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence."

In applying the above test, we must evaluate the entire record and we must consider all evidence actually received. *DiStefano*, 782 A.2d at 582. Further, "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Id.*

> Regarding evidence of identification, this Court recently reiterated:

> > [E]vidence of identification need not be positive and certain to sustain a conviction. Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator. Out-of-court identifications are relevant to our review of sufficiency of the evidence claims, particularly when they are given without hesitation shortly after the crime while memories were fresh. Given additional evidentiary circumstances, any indefiniteness and uncertainty in the identification testimony goes to its weight.

*Commonwealth v. Valentine*, 101 A.3d 801, 806 (Pa.Super.2014) (quoting *Commonwealth v. Orr*, 38 A.3d 868, 874 (Pa.Super.2011))*.*

Whether a verdict is against the weight of the evidence is "addressed to the discretion of the trial court." *Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (citing *Commonwealth v. Widmer*, 744 A.2d 745, 751–52

(2000)). "A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, 'the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" *Id.*, at 1055 (quoting *Widmer*, 744 A.2d at 752). Courts should award "a new trial . . . when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Id.* (quoting *Commonwealth v. Brown*, 648 A.2d 1077, 1189 (Pa.1994)).

Further, "[a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Clay*, 64 A.3d at 1055 (quoting *Widmer*, 744 A.2d at 753). "Because the trial judge had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence." *Id.* (quoting *Widmer*, 744 A.2d at 753).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Michael E. Bortner, we conclude Appellant's issues merit no relief. The 1925(a) Opinion comprehensively discusses and properly disposes of the questions presented. *See* 1925(a) Opinion, pp. 4-8 (finding (1) identification evidence

- 7 -

presented was sufficient to identify Appellant as armed robber where: (a) victim identified Appellant at photographic lineup, (b) although victim was unable to identify Appellant with 100% certainty at preliminary hearing without observing his teeth and mouth, she positively identified photographs of Appellant's mouth as that of assailant, (c) second victim identified Appellant from video surveillance as robber, and (d) jury compared surveillance footage of Appellant to surveillance footage of robber;[6] and (2) verdict was not against weight of evidence where jury found Ms. Clark, Mr. Generate, and Detective Haller credible and their testimony provided enough evidence to find Appellant guilty beyond a reasonable doubt and noting jury was not required to believe testimony of Appellant's girlfriend). Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of Sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/21/2015

---

[6] In addition, the jury had an opportunity to compare the two surveillance videos to Appellant, who was present at trial.

RECEIVED/FILED
YORK COUNTY
JUDICIAL CENTER

2014 MAR 27 AM 10: 34

DON O'SHELL
CLERK OF COURTS

# IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH | : | |
| | : | |
| v. | : | NO. CP-67-CR-1702-2013 |
| | : | |
| MICHAEL DURDEN | : | |
| Defendant/Appellant | : | |

COUNSEL OF RECORD:

Jeff Rigby, Esquire
Counsel for the Commonwealth

Seamus D. Dubbs, Esquire Jr.
Counsel for Defendant

## OPINION IN SUPPORT OF ORDER PURSUANT TO RULE 1925(a) OF THE RULES OF APPELLATE PROCEDURE

The Court received a Notice of Appeal, filed on January 7, 2014, that the Defendant appeals to the Superior Court of Pennsylvania this Court's Order denying the Defendant's post-sentence motion on December 23, 2013. The Court has reviewed the record, and the Defendant's Statement of Matters Complained of on Appeal, docketed on February 25, 2014. The Court now issues this Opinion in support of its Order, dated December 23, 2013.

### I.     Procedural History

On November 14, 2013, this Court held a jury trial for the Defendant in this case. On that same date, the Jury found the Defendant guilty of the following crimes: Robbery under 18 Pa. C.S.A. § 3701(a)(1)(ii); Person not to Possess a Firearm under 18 Pa. C.S.A. § 6105(a)(1); and Firearms not to be Carried Without a License under 18 Pa. C.S.A. § 6106(a)(1). This Court sentenced the Defendant on December 16, 2013, to an aggregate term of 11-22 years in a state correctional institution. This Court denied the Defendant's post-sentence motions generally on December 23, 2013.

1

The Defendant now challenges two issues on appeal. First, the Defendant argues that the Commonwealth presented insufficient evidence for the Jury to return a verdict of guilt beyond a reasonable doubt. Second, the Defendant argues that the Jury's verdict went against the weight of the evidence.

## II.    Facts

The Court avers the following relevant facts that it has taken from the testimony presented at the jury trial held on November 14, 2013.[1] On the night of October 26, 2012, the Dollar General in the North York Shopping Plaza was robbed at gunpoint by a black male. Two employees, Christie Clark and Terrance Generate, were working at the Dollar General that night around 8:30 p.m. Ms. Clark explained that not many customers were in the store at that hour because the store closed at 9 p.m. Both Ms. Clark and Mr. Generate testified that one customer caught there attention as he entered the store because he was wearing sunglasses when it was completely dark outside.

When the man wearing the sunglasses was the only one left in the store, he approached Mr. Generate and showed him a gun in his waistband. He and Mr. Generate then headed to the front of the store, and the perpetrator made contact with Ms. Clark. The perpetrator then took both employees to the back of the store, and he had Ms. Clark tie up Mr. Generate with a shoelace. The man then put Mr. Generate in the bathroom and took Ms. Clark back to the register and safe at the front of the store. The man told Mr. Generate to stay in the bathroom or things would not be good for either one of the employees. Both employees took this as a threat. At the front of the store, Ms. Clark emptied the register and the safe, and she gave the money to the armed robber. After getting the money, the man tied up Ms. Clark in the back bathroom with Mr. Generate, and he told them to stay there for five minutes. The two

---

[1] The notes of testimony were not yet made available to the Court for purposes of this appeal. The Court relies on its own notes taken during the testimony throughout trial.

2

employees complied with this request, and when they exited the bathroom, the armed robber was gone.

On December 22, 2012, the manager of the Dollar General recognized a similar man entering the store. The manager had reviewed the security footage multiple times. The manager approached Mr. Generate, who happened to be working that night as well, and asked him if the man who just entered was the same man who robbed the store in October. This man also wore sunglasses into the store when it was completely dark outside, and he had the same skin tone as the man who robbed the store. Once Mr. Generate informed the manager that he was very positive the man was the armed robber, the manager got the man's license plate, and Mr. Generate contacted the police.

Detective Haller, the case investigator, traced the license plate to a residence near the Dollar General. The vehicle was registered to Paula Butler, who is the Defendant's girlfriend. The residence also belonged to Paula Butler. Mr. Haller went to the address and made contact with a person on the second floor. After shown a still shot of the security footage, that person identified the Defendant as one of the two men who entered the store on December 22, 2012. Mr. Haller then contacted Ms. Clark and put together a photo lineup for her to review. On January 8, 2013, she identified the Defendant in that lineup as the man who robbed the store in October.

When Detective Haller finally made contact with the Defendant, Mr. Haller asked him why he was wearing sunglasses in the store when it was completely dark outside. The Defendant explained that he had problems with his eyes. When talking with the Defendant, Mr. Haller noticed the Defendant's mouth and how he spoke. The Defendant's mouth, teeth and speech matched Ms. Clark's observations during the robbery. Ms. Clark had told Detective Haller that the armed robber's teeth were very distinctive because one of his teeth was chipped. After executing a search warrant on the residence of Paula Butler, Detective Haller found gloves that were very similar to those used in the robbery. No other evidence of the crime

3

was found at the residence. Detective Haller then filed charges against the Defendant.

At the preliminary hearing in March of 2013, Ms. Clark testified that she was not 100% certain that the Defendant was the person who robbed the Dollar General. She testified that she was fairly certain that the man she identified in the photo lineup was the armed robber. Ms. Clark testified that she needed to see the teeth to be more confident. Detective Haller obtained a search warrant to obtain the Defendant's DNA and photos of his mouth/teeth. Ms. Clark then explained that she was shown what Detective Haller described as the suspect's teeth. The photo only depicted the Defendant's teeth, and Ms. Clark was shown multiple pictures. Ms. Clark informed Mr. Haller that the mouth/teeth in the picture was the same mouth of the man who robbed the Dollar General. Ms. Clark further testified that she was positive it was the same mouth. She had focused on the armed robber's mouth because he was wearing sunglasses and her focus was on his mouth.

Paula Butler, the Defendant's girlfriend, also testified during trial. She explained that the Defendant had been with her all night on October 26, 2012, and he could not have robbed the Dollar General. She testified that she had previously pled guilty to a retail theft charge. She testified that she and the Defendant had gone shopping that night and did not return home until around 9:10 p.m. She told the Jury that they went to Ross (in East York), 5 Below, and Dicks Sporting Goods. Detective Haller testified that Ms. Butler told him they had gone to Wal-Mart in the west York area that night.

## III.     Matters Complained of on Appeal

### A.     Sufficiency of the Evidence

The Defendant first argues that the evidence presented during trial is not sufficient for a jury to return a verdict of guilty for robbery and the gun related offenses. The Defendant contends that the

4

evidence presented at trial lacked any identification that linked him to the crime committed and charged. We respectfully disagree with the Defendant's interpretation of the testimony and evidence, and we conclude that the evidence is sufficient to establish each crime charged beyond a reasonable doubt.

Where the challenge is to sufficiency of evidence, the evidence must be reviewed "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). See *Commonwealth v. Hutchinson*, 947 A.2d 800, 805 (Pa. Super. Ct. 2008). For the conviction to be upheld, the evidence must be sufficient to allow the fact-finder to find every element of the crime beyond a reasonable doubt. *Id.* In proving the crime, the Commonwealth may rely solely on circumstantial evidence, and the fact-finder is permitted to believe all, part, or none of the evidence. *Id.* at 806. Any doubts about the defendant's guilt are to be resolved by the fact-finder unless the evidence was so weak and inconclusive that no probability of fact could be drawn from the evidence. *Commonwealth v. Habay*, 732, 735 (Pa. Super. Ct. 2007). The credibility, or lack thereof, of the witnesses is not an appropriate argument for why the verdict was against the sufficiency of the evidence since "credibility determinations are within the sole province of the jury." *Martin v. Evans*, 711 A.2d 458, 463 (Pa. 1998).

As mentioned previously, the Defendant contends that the Commonwealth's case presented during trial lacks any evidence identifying the Defendant as the perpetrator of the robbery. In other words, the Defendant does not challenge that a robbery at gunpoint in fact occurred, but the Defendant does challenge the Commonwealth's position—and the Jury's verdict—that the Defendant is the one who committed the robbery in question. The question for this Court to consider is whether sufficient evidence exists to identify the Defendant as the perpetrator of the robbery. This Court concludes that sufficient evidence exists to identify and link the Defendant to the commission of the robbery at the Dollar General on October

5

26, 2012.

Ms. Clark identified the Defendant in a photo lineup, and Detective Haller reaffirmed this positive identification. At the preliminary hearing, Ms. Clark could not identify the Defendant in the courtroom with 100% accuracy because she needed to see his mouth and teeth. Ms. Clark testified that her focus on the night of the robbery was on the armed robber's mouth and teeth because his sunglasses and hat covered everything else. Ms. Clark and Mr. Generate explained that the armed robber had a chipped tooth, which made his mouth memorable to them. After the preliminary hearing, Detective Haller showed Ms. Clark a picture of the suspect's mouth and teeth. When she viewed these photos, she informed Detective Haller that she was positive that mouth matched the armed robber's mouth. The mouth and teeth in the picture belonged to the Defendant.

Mr. Generate, the male victim, also identified the Defendant as the armed robber. Mr. Generate saw the perpetrator on the night of the robbery, and he identified the Defendant to his manager when the Defendant entered the Dollar General a second time on December 22, 2012. In the eyes of Detective Haller, this served as a positive identification for purposes of his investigation.

The Jury was also able to compare the surveillance footage from the night of the robbery to the surveillance footage taken on December 22, 2012, when the Defendant entered the Dollar General with another man. The Jury could compare the known individual on December 22 with the unknown armed robber. The two individuals had the same skin tone, body build, both wore a hat, and both wore sunglasses when it was completely dark outside.

The Court finds this evidence of identification sufficient for a Jury to identify the Defendant as the armed robber on October 26, 2012. The Commonwealth is entitled to all reasonable inferences from the evidence at this stage. See *Widmer*, supra. An in-court identification of the Defendant as the perpetrator

6

of the crime is not an essential element for the Commonwealth to show at trial. The identity of the Defendant as the perpetrator of the crime can be established by circumstantial evidence, as well as by showing an independent basis for identification outside of court. See generally *Commonwealth v. Fisher*, 769 A.2d 1116 (Pa. 2001). The Defendant does not challenge the lineup or photos of the Defendant's mouth/teeth as being overly suggestive in this case, and in fact, the Defendant makes no challenge to the out-of-court identifications at all. The similarities in the surveillance footage combined with Ms. Clark's and Mr. Generate's identifications provide sufficient evidence for a jury to identify the Defendant as the armed robber. We conclude that the Commonwealth presented sufficient evidence to identify the Defendant, and as such, we further conclude that the evidence is sufficient to prove all the charges beyond a reasonable doubt.

### B.    Weight of the Evidence

The Defendant next argues that the jury's verdict goes against the weight of the evidence presented during trial. We disagree and conclude that the Jury's verdict in this case does not go against the weight of the evidence presented for any crime charged.

"The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) (citing *Commonwealth v. Johnson*, 668 A.2d 97, 101 (Pa. 1995), *cert. denied*, 519 U.S. 827 (1996)). "The trial court should grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice and not where the evidence is conflicting or where the trial judge would have reached a different conclusion on the same facts." *Lombardo v. DeLeon*, 828 A.2d 372, 374 (Pa. Super. Ct. 2003) (citing *Davis v. Mullen*, 773 A.2d 764, 766 (Pa. 2001)).

7

The Jury found as credible the testimony of Ms. Clark, Mr. Generate and Detective Haller. This testimony taken as a whole provides enough evidence to find the Defendant guilty beyond a reasonable doubt. Although the Defendant's girlfriend testified at trial, the Jury was free to believe all, part or none of her testimony. See *Champney*, supra. In this case, the Jury did not find the girlfriend's testimony credible, and mere conflicting evidence is not enough to sustain a challenge to the weight of the evidence. See *Lombardo*, supra. We find that the Jury's determinations do not shock one's sense of justice, and we conclude that the Jury's verdict does not go against the weight of the evidence presented at trial.

## IV.  Conclusion

Based upon the reasons stated above, this Court respectfully urges affirmance of the Jury's verdict and this Court's Order denying the Defendant's post-sentence motion.

BY THE COURT,

DATED: March _26_, 2014

MICHAEL E. BORTNER, JUDGE

8