J-A07034-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LAVELLE MILLS | |
| Appellant | No. 1675 WDA 2014 |

Appeal from the Judgment of Sentence September 11, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0009837-2011

BEFORE:  BOWES, J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED APRIL 19, 2016**

Appellant appeals from his judgment of sentence following his bench trial convictions for possession of firearm with altered manufacturer's number, persons not to possess firearms, firearms not to be carried without a license, registration card to be signed and exhibited on demand, unauthorized transfer or use of registration, driving while operating privilege is suspended or revoked, required financial responsibility, and duties at stop signs and/or yield signs.[1]  Appellant claims the trial court erred in denying his motion to suppress evidence found during a search of the vehicle he was driving and claims the Commonwealth did not present sufficient evidence that he possessed the firearm.   We affirm.

_____

[1] 18 Pa.C.S. §§ 6110.2(a), 6105(a)(1), 6106(a)(1); 75 Pa.C.S. §§ 1131(b), 1311(b), 1543(a), 1786(f), and 3323, respectfully.

The trial court summarized the factual background as follows:

This [m]atter arises out [of Appellant's] arrest on May 18, 2011[,] following a traffic stop on the North Side of Pittsburgh during which a firearm was found in the vehicle [Appellant] was operating. [Appellant] filed a [m]otion to [s]uppress the firearm on the basis that the police lacked probable cause to search the vehicle; there was no consent to search the vehicle; and[] the search was not conducted pursuant to [a] valid inventory search.

At the suppression hearing held on July 10, 2013[,] the Commonwealth presented the testimony of Allegheny County Deputy Sheriff Sean Green[,] who testified that he initiated a traffic stop of [Appellant's] vehicle after it failed to stop at a stop sign. ([N.T., 7/10/2013, at] 4 (hereinafter "S.H. Transcript")). After stopping the vehicle, [Appellant] jumped out of his vehicle and started moving toward a group of people standing on a nearby corner. ([*Id.* at] 5). Sheriff Green ordered [Appellant] back into the vehicle and requested his driver's license and vehicle information. Sheriff Green called for backup and City of Pittsburgh officers and detectives responded and assisted him. [Appellant] produced a non-driver's identification card and it was determined that [Appellant's] driver's license was suspended and he had several non-traffic and traffic magistrate warrants. ([*Id.* at] 5-7). Although [Appellant] was driving a 2004 GMC Yukon, [Appellant] produced an insurance card for a 2001 Jeep and it was determined that the vehicle was, in fact, registered to an individual from Beaver County. ([*Id.* at] 6). The license plate on the vehicle did not match the registration. After it was determined that [Appellant] did not have a driver's license and the plate displayed on the vehicle was for the wrong vehicle, the decision was made to have the vehicle towed because it could not be legally operated or moved. ([*Id.* at] 7) Deputy Green also described the area where the stop occurred as a high crime area. ([*Id.* at] 8). Deputy Green testified that once it was determined that the vehicle had to be towed, an inventory search would be done that involved searching for any loose items or moveable items in the vehicle. ([*Id.* at] 8). Deputy Green testified:

Q. What are the procedures in regard to inventories?

A. Well we are supposed to search [the] vehicle for any weapons, contraband before it is taken to Manchester.

Q. What is included within that search?

A. The entire vehicle. We have to -- anything, any loose articles, any bags, anything in the vehicle that [is] moveable or appears to be moveable is searched.

Q. How about any consoles, any storage places?

A. Yes, the glove compartment, console area, definitely the console area, that would be loose or not properly affixed.

([*Id.* at] 7-8). Deputy Green testified on cross[-]examination that he prepared a "sheriff's office tow form," although he did not have a copy of the form. ([*Id.* at] 17). He also acknowledged that he did not conduct the search of the vehicle but it was done by the City of Pittsburgh officers.

Detective John Henderson from the City of Pittsburgh Police testified that he arrived as backup on the stop and that Officer Holt obtained consent to search the vehicle. ([S.H. Transcript at] 21 -22). Upon opening the passenger side door he saw a live .45 caliber round on the floor of the front seat. ([*Id.* at] 22). A loaded .45 caliber semi-automatic firearm was found in a void in a molded piece in the center console. ([*Id.* at] 22).

Officer Nicholas Holt testified that he arrived as backup and obtained consent to search the vehicle and during the search found the firearm as described. ([S.H. Transcript at] 27). He testified that [Appellant] never retracted his consent to search the vehicle and that the search he conducted was pursuant to the consent that was given. ([*Id.* at] 29).

[Appellant] presented the testimony of his sister, Kim Washington, who testified that she lived in the neighborhood where the stop occurred and after she learned that there were police stopping a vehicle nearby,

- 3 -

she went to the scene. ([S.H. Hearing at] 34). When she arrived [Appellant] was in the vehicle and then he was told to get out of the vehicle. When he was asked if they could search the vehicle, he repeatedly told them no, however they proceeded with the search. (*Id.*)

[Appellant] argued that the officers did not have consent to search the vehicle and that there was no basis for an inventory search. After consideration of all of the evidence[,] an order was entered denying the motion to suppress on the basis that a valid inventory search was warranted.

At the non-jury trial the testimony from the suppression hearing was incorporated into the record and Detective John Henson also testified that the firearm's serial numbers were scratched out. ([N.T., 6/24/2014, at] 13 (hereinafter "Tr. Transcript")). The Commonwealth also offered the certification that [Appellant] did not have a license to possess the firearm and the lab report regarding the firearm. ([*Id.* at] 21).

[Appellant] testified that he worked with his brother doing repair work on vehicles and that he was driving the vehicle at the time of the traffic stop because he was changing the oil and had only taken the vehicle from the shop to get something to eat for him and his brother. ([Tr.Transript at] 25). He testified that the vehicle was owned by "a guy, Brian -- it was his girlfriend's car or something like that." ([*Id.* at] 26). He testified that he tried to buy the vehicle but it didn't work out and that he had possession of the vehicle for "[a]bout a week and a half, 2 weeks." ([*Id.* at] 27). He testified that he had never worked on the interior of the vehicle and did not know the firearm was in the vehicle. ([*Id.* at] 30). On cross-examination [Appellant] testified that he had tried to purchase the vehicle but did not have enough money. Furthermore, when he went to use the vehicle that day, someone else had placed the license plate from the other vehicle that he had owned, which was just lying around, on the vehicle when he went for the food. ([*Id.* at] 37-38). [Appellant] also acknowledged that he did not have a driver's license and there was no insurance on the vehicle. ([*Id.* at] 49-50). Finally, he testified that the owner of the vehicle had taken the license plate off the vehicle, presumably so no one

could take it off the lot while it was being repaired. ([*Id.* at] 44). After consideration of the evidence[, Appellant] was found guilty of all charges.

Opinion, 7/14/2015, at 2-5.

On September 11, 2014, the trial court sentenced Appellant to 35 to 70 months' imprisonment for the possession of firearm with altered manufacturer's number conviction, 5 years' probation for the persons not to possess firearms conviction, and 5 years' probation for the firearms not to be carried without a license conviction. The terms of probation were concurrent to each other, but consecutive to the term of imprisonment. The trial court imposed no further penalty for the remaining convictions.

On October 10, 2014, Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.[2]

Appellant raises the following issues on appeal:

> I. Did the trial court err in denying [Appellant's] suppression motion because the police did not have lawful custody of the SUV, and, therefore, the inventory search was invalid?

_____

[2] On October 15, 2014, the trial court ordered Appellant to file a statement of errors complained of on appeal pursuant to Rule 1925(b) within 21 days of the entry of the order. On November 5, 2014, Appellant requested an extension, and, on November 6, 2014, the trial court granted Appellant a sixty-day extension of time to file a Rule 1925(b) statement. On January 5, 2015, Appellant filed a petition for an extension of time to file his Rule 1925(b) statement and, on January 6, 2015, the trial court granted Appellant a 30-day extension of time. Appellant filed his concise statement of errors complained of on appeal on February 5, 2015. The trial court issued its Rule 1925(a) opinion on July 14, 2015.

II. Did the trial court err in denying [Appellant's] suppression motion because police conducted the search for criminal investigatory purposes rather than non-criminal inventory purposes?

III. Was the evidence insufficient to establish that [Appellant] constructively possessed the gun found in a closed console of a vehicle that was not his?

Appellant's Brief at 5.

Appellant's first two issues challenge the denial of his suppression motion. When reviewing a denial of a suppression motion, we limit our review to determining whether the record supports the factual findings and whether the legal conclusions drawn from those facts are correct. *Commonwealth v. Brown*, 64 A.3d 1101, 1104 (Pa.Super.2013). We may only consider evidence presented at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1085-87 (Pa.2013). In addition, because the Commonwealth prevailed in the suppression court, we consider only the Commonwealth's evidence and so much of the defense evidence "as remains uncontradicted when read in the context of the record as a whole." *Brown*, 64 A.3d at 1104 (quoting *Commonwealth v. Cauley*, 10 A.3d 321, 325 (Pa.Super.2010)). We may reverse only if the legal conclusions drawn from the facts are in error. *Id.*

The Commonwealth contends Appellant cannot prevail on the suppression motion because he lacked a reasonable expectation of privacy in the vehicle. Appellee Brief at 26-28.

"[G]enerally under Pennsylvania law, a defendant charged with a possessory offense has automatic standing to challenge a search."

*Commonwealth v. Maldonado*, 14 A.3d 907, 910 (Pa.Super.2011) (quoting *Commonwealth v. Burton*, 973 A.2d 428, 435 (Pa.Super.2009) (*en banc*)). To prevail on a motion to suppress evidence, however, the appellant must establish he has a privacy interest in the area searched.[3] *Id.*; *Commonwealth v. Jones*, 874 A.2d 108, 113 (Pa.Super.2005) (citing *Commonwealth v. Perea*, 791 A.2d 427, 429 (Pa.Super.2002)). This Court has stated:

> An expectation of privacy is present when the individual, by his conduct, exhibits an actual (subjective) expectation of privacy and that the subjective expectation is one that society is prepared to recognize as reasonable. The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances.

*Jones*, 874 A.2d at 113 (quoting *Commonwealth v. Brundidge*, 620 A.2d 1115, 1118 (Pa.1993)).

On the issue of whether the defendant has a reasonable expectation of privacy in the area searched, the Commonwealth bears the initial burden of production. *Enimpah*, 106 A.3d at 701. If the Commonwealth meets its

---

[3] The Supreme Court of Pennsylvania has explained: "[Although] a defendant's standing dictates when a claim under Article I, § 8 may be brought, his privacy interest controls whether the claim will succeed—once a defendant has shown standing, '[h]e must, in short, having brought his claim, demonstrate its merits by a showing of his reasonable and legitimate expectation of privacy in the premises.'" *Commonwealth v. Enimpah*, 106 A.3d 695, 699 (Pa.2014) (quoting *Commonwealth v. Peterson*, 636 A.2d 615, 618 (Pa.1993)).

burden by showing the defendant lacked a privacy interest, then the defendant has the burden of persuasion to establish he had a privacy interest in the area searched. *Id.*

In *Jones*, this Court found the appellant did not have a reasonable expectation of privacy in a rental vehicle where the return date had expired, the appellant was not the named lessee, the named lessee was not in the vehicle, the appellant was not authorized to drive the vehicle, and the appellant and his passengers did not attempt to explain their connection to the authorized lessee. 874 A.2d at 120. This Court held that, because the appellant did not have an expectation of privacy in the vehicle searched, the trial court properly denied the motion to suppress.

In *Commonwealth v. Brown*, this Court found an appellant did not have an expectation of privacy in the vehicle searched and, therefore, could not prevail on his suppression motion, where he did not own the vehicle, and did not introduce evidence he had authority to use the vehicle. 64 A.3d 1101, 1107 (Pa.Super.2013). Similarly, in *Commonwealth v. Cruz*, the Court found the appellant lacked a reasonable expectation of privacy in a vehicle where he presented no evidence that he owned the vehicle, that it was registered in his name, or that the registered owner gave him permission to drive the vehicle. 21 A.3d 1247, 1251 (Pa.Super.2011).

Appellant did not own the car he was driving, which was registered to someone who resided in a different county. He provided an insurance card to the officer, but the card was for another vehicle. Further, at the

suppression hearing, Officer Green testified Appellant told him that he was working on the car. S.H. Transcript at 14.[4] Placing a car with a repair shop does not authorize a repair shop owner or employee to use the car, and the owner or employee of the shop does not have an expectation of privacy in the car. The Commonwealth's evidence showed Appellant lacked a reasonable expectation of privacy in the vehicle, and Appellant presented no evidence at the suppression hearing to establish he had such an expectation. Accordingly, because Appellant lacked a reasonable expectation of privacy in the car, he cannot establish the search of the car violated his constitutional rights.[5] The trial court did not err in denying the suppression motion.[6]

Appellant's last issue claims the Commonwealth presented insufficient evidence that he possessed the firearm found in the vehicle. Appellant's Brief at 36-44.

We apply the following standard when reviewing a sufficiency of the evidence claim: "[W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to

_____

[4] At trial, Appellant explained that he worked with his brother repairing cars. Tr. Transcript at 25.

[5] Because we find Appellant lacked a reasonable expectation of privacy in the vehicle searched, and, therefore, cannot prevail on his suppression motion, we need not address his claims challenging the search.

[6] This Court can affirm the trial court decision on any basis. **In re Jacobs**, 15 A.3d 509, 509 n.1 (Pa.Super.2011) ("We are not bound by the rationale of the trial court, and may affirm on any basis.").

enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Lehman*, 820 A.2d 766, 772 (Pa.Super.2003), *affirmed*, 870 A.2d 818 (Pa.2005) (quoting *Commonwealth v. DiStefano*, 782 A.2d 574 (Pa.Super.2001)). When we apply this standard, "we may not weigh the evidence and substitute our judgment for the fact-finder." *Id.*

"[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Lehman*, 820 A.2d at 772. Moreover, "[a]ny doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Id.* "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Id.*

In applying the above test, we must evaluate the entire record and we must consider all evidence actually received. *DiStefano*, 782 A.2d at 582. Further, "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Id.*

Appellant maintains the Commonwealth failed to establish he possessed the firearm. Appellant's Brief at 36-44. Because the firearm was not found on Appellant's person, the Commonwealth had to establish that Appellant constructively possessed the firearm. *Commonwealth v. Brown*,

- 10 -

48 A.3d 426, 430 (Pa.Super.2012). This Court has described constructive possession as follows:

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control." To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Id.* (quoting ***Commonwealth v. Parker***, 847 A.2d 745, 750 (Pa.Super.2004)).

The Commonwealth presented sufficient evidence to allow the fact-finder to find beyond a reasonable doubt that Appellant constructively possessed the gun, i.e., that he had the power to control the firearm and the intent to exercise that control. Appellant was driving the vehicle in which the firearm was found and attempted to distance himself from the vehicle when pulled over, Appellant had attempted to purchase the vehicle, the license plate on the car belonged to a car previously owned by Appellant, and the police found a bullet on the passenger-side floor, which the driver of the vehicle would have seen.[7] ***See Cruz***, 21 A.3d at 1253 (sufficient

_____

[7] Appellant argues Officer Henson testified that the bullet was "where the two bolts go down to secure the [passenger] seat to the floor." Appellant's Brief at 38 (citing S.H. Transcript at 25) (alteration in original). The officer, however, also testified, both at the suppression hearing and at trial, that he

*(Footnote Continued Next Page)*

evidence to find appellant constructively possessed the firearm where appellant was only person in the vehicle, he was seen moving toward where gun was found as soon as he was aware that he was being stopped, and he exhibited a marked consciousness of guilt); *Jones*, 874 A.2d at 122 (finding of constructive possession upheld where police found cocaine in the cabin of car, in plain view, while outside of the rental car, Appellant was "constantly staring" in the direction of the passenger seat from which the cocaine was discovered, and Appellant had $481.00 in small denominations, which is common for someone involved in a drug distribution scheme); *Commonwealth v. Cruz Ortega*, 539 A.2d 849, 851, 851 n.1 (Pa.Super.1988) (appellant, a passenger in a rented vehicle, constructively possessed cocaine where cocaine was found under the seat in which appellant was sitting, before police stopped the vehicle appellant was observed leaning over in his seat, and there was a money order appellant purchased in glove compartment).

Judgment of sentence affirmed.

_____

*(Footnote Continued)* ————————————

saw the bullet as soon as he opened the door. S.H. Transcript at 25; Tr. Transcript at 20.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/19/2016