**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**Russell Edward LEHMAN, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 13, 2003.
Filed March 24, 2003.

---

Paul J. Powers, Mercer, for appellant.

Samuel R. Zuck, Asst. Dist. Atty., Mercer, for Com., appellee.

Before: MUSMANNO, LALLY–GREEN and TAMILIA, JJ.

TAMILIA, J.

¶ 1 Russell Edward Lehman appeals from the February 1, 2002, forty-eight (48) hour to eighteen (18) month judgment of sentence imposed after a jury found him guilty of operating a motor vehicle with a blood alcohol content of 0.1% or greater.[1] The charge arose after appellant was discovered passed out in the driver's seat of his car, which was stopped on the side of the road with its engine running. Appellant argues (1) the results of his blood alcohol content test (BAC) should have been suppressed; (2) the evidence present-ed was insufficient to establish he was in physical control of the vehicle; and (3) his trial was wrongly conducted beyond the 365–day time period prescribed by Rule 600, **Prompt Trial**.

¶ 2 In early morning hours of August 14, 1999, Officer Robert Wagner, a five-year veteran of the Lawrence County New Wilmington Borough Police Department, was stopped by an anonymous passerby and told that about ¾ of a mile down the road, in Mercer County, there was a vehicle parked near the roadway and the driver was slumped over. The passerby expressed obvious concern for the driver's well being (N.T., Suppression Hearing, 1/10/01, at 6–7). Based on this information, Officer Wagner proceeded to the scene, located ¼ mile outside of his jurisdiction, and discovered the appellant's car, engine running, headlights on, radio blaring, parked in a closed hardware store parking lot, perpendicular to and facing the road, approximately one foot from the fog line. The driver, Officer Wagner observed, was very sweaty and slumped to the passenger's side. *Id.* at 8–9. These observations, coupled with the officer's inability to rouse appellant either by shouting at him or shaking him, caused Officer Wagner to fear appellant had a health problem causing his stupor. *Id.* at 10. When, after a few minutes, appellant finally awakened, he was confused and did not know where he was or why he was there. *Id.* At this point, having detected the odor of alcohol, Officer Wagner determined appellant was not in need of medical attention and therefore did not call an ambulance. *Id.* at 29. The officer asked for identification and, after several moments of confusion, the appellant produced his license. *Id.* at 11. At this point Officer Wagner returned to his cruiser and con-

---

1.   75 Pa.C.S.A. § 3731(a)(4)(i).

tacted the Mercer County Pennsylvania State Police because, "[he] felt the individual was under the influence and it was their jurisdiction to handle the incident." *Id.* at 12. Mercer County advised Officer Wagner it was unable to respond and would relay the information to the State Police barracks in New Castle, Lawrence County. The State Police asked that Officer Wagner stand by until an officer could reach the scene. *Id.* at 17.

¶ 3 Officer Wagner then returned to appellant's vehicle where appellant, still voicing his confusion as to where he was, asked if he could exit his vehicle. Permission was granted. As the two men chatted, Officer Wagner asked appellant if he would perform field sobriety tests.

[The Commonwealth]: And why did you ask him that?

[Officer Wagner]: I just—Basically, for my observation and practice, it was like something I did. *I didn't keep notes on him or anything like that. I don't have any notes on the sobriety tests.*

[The Commonwealth]: And how did you make that request of him? If you don't recall the exact words, just approximately.

[Officer Wagner]: I don't recall the exact words. I think I just asked him to perform some sobriety tests and he said that he would do them.

[The Commonwealth]: Do you recall whether it was a request rather that an order?

[Officer Wagner]: Yes, it was a request.

[The Commonwealth]: What was his response when you made that request?

[Officer Wagner]: "Sure. I'll do them."

*Id.* at 16 (emphasis added). "After the field sobriety tests we just stood out back of the vehicle there and was [sic] chitchatting normally and then Officer Lut[es] and Trooper Jones [both of Pennsylvania State Police New Castle Barracks, Lawrence County] came on the scene." *Id.* at 17.

¶ 4 At trial, Trooper Lutes testified he and Trooper Jones arrived on the scene approximately 30 minutes after they received the call from dispatch (N.T., Jury Trial, 1/15–16/02, at 42). When they arrived, Officer Wagner and appellant were standing in the parking lot and appellant's car was parked as previously described. The troopers then assumed the investigation.

¶ 5 In response to the officers' questions, appellant admitted he had been driving the car, but had no idea where he was or why. Appellant explained he had been drinking beer with a girl at a bar, the two of them left to get something to eat, and then he intended to take her home. He had no idea, however, how or why he ended up in this parking lot and alone. *Id.* at 43–44. Because appellant demonstrated signs of intoxication including slurred speech, excessive talking, red eyes, swaying when standing still and staggering when walking, the troopers asked appellant to perform field sobriety tests. He willingly did so, failed and was arrested for driving while under the influence. The blood sample subsequently drawn indicated a BAC of between 0.157% and 0.174%, with an average of 0.162%. *Id.* at 116–117.

¶ 6 On May 10, 2000, appellant filed a pretrial motion to suppress and the scheduled hearing was continued pending resolution of appellant's application for ARD (Accelerated Rehabilitative Disposition). His ARD request was denied on October 5, 2000, and a hearing on the motion to suppress was conducted January 10, 2001. The motion was denied February 9, 2001, and appellant proceeded to trial in January 2002. The jury acquitted him of being intoxicated to a degree which rendered him incapable of safe driving, in violation of section 3731(a)(1) of the Vehicle Code,

but convicted him of driving while his BAC exceeded 0.1%. He was sentenced February 1, 2002, and this appeal followed.

¶ 7 Appellant argues the evidence obtained against him should have been suppressed based on the fact Officer Wagner detained him outside his jurisdiction (New Wilmington Borough), in violation of the Municipal Police Jurisdiction Act, hereinafter the "Act". *See* 42 Pa. C.S.A. § 8953, **Statewide municipal police jurisdiction**. Our standard of review for cases challenging the ruling of a suppression court follows.

When we review the ruling of a suppression court, we must first ascertain whether its factual findings are supported by the record and whether the inferences and legal conclusions drawn from those facts are reasonable. Where the defendant challenges an adverse ruling of the suppression court, we will consider only the evidence for the prosecution and whatever evidence for the defense that remains uncontradicted in the context of the whole record. If there is support on the record, we are bound by the facts as found by the suppression court, and we may reverse that court only if the legal conclusions drawn from these facts are in error.

If there is sufficient evidence of record to support the suppression court's ruling and that court has not misapplied the law, we will not substitute our credibility determination for that of the suppression court judge.

*Commonwealth v. Smith,* 808 A.2d 215, 220 (Pa.Super.2002), *quoting Commonwealth v. Palmer,* 751 A.2d 223, 225–226 (Pa.Super.2000) (citations omitted). The Act provides, *inter alia,* that on certain occasions, in the course of performing his duties, a police officer may cross jurisdictional lines. 42 Pa.C.S.A. § 8953. "We must construe this Act liberally to effectu-ate its objectives and promote justice. Any other interpretation of the Act, given the facts presented, would not be in keeping with the legislative intent of the Act as espoused by our Supreme Court in [*Commonwealth v. Merchant,* 528 Pa. 161, 595 A.2d 1135 (1991) ]." *Commonwealth v. Eisenfelder,* 444 Pa.Super. 435, 664 A.2d 151, 154 (1995) (citation omitted).

¶ 8 The section of the Act relied upon by the Commonwealth for its argument that an officer *may* cross jurisdictional lines when on official business follows:

(5) *Where the officer is on official business and views an offense, or has probable cause to believe that an offense has been committed,* and makes a reasonable effort to identify himself as a police officer and which offense is a felony, misdemeanor, breach of the peace or other act which presents an immediate clear and present danger to persons or property.

42 Pa.C.S.A. § 8953(a)(5) (emphasis added). The Commonwealth's "official business" argument is part and parcel of a conjunctive standard that includes at least one of the previously stated elements; (1) having observed a crime or (2) having reason to believe a crime has been or is being committed. Reading this section of the Act in its entirety, Officer Wagner's actions may be construed as being in violation of the Act; there was no "offense" witnessed by Officer Wagner, nor did he have reason to believe one had been committed.

¶ 9 While arguably appellant is correct, Officer Wagner did cross the county line without having "seen" a crime being committed or believing a crime to have been committed, thereby exceeding his legal jurisdiction, he did so in response to what he feared was a medical emergency. He acted in his official capacity to assure a citizen's well being, an affirmative duty imposed upon him by virtue of his position

as a public servant. Had Officer Wagner knowingly and intentionally ignored the citizen's report due to a line on a map, not only would he have been considered morally derelict, in today's society he would have opened himself up to a possible lawsuit. Once Officer Wagner ascertained or suspected appellant was intoxicated, his concern and responsibility rightfully turned toward the general public and included, we are confident, an intent to keep an impaired driver off the roadways. He notified the proper authorities, that being the Pennsylvania State Police, and in response to their request, stood by and awaited their arrival. While in the interim, appellant and Officer Wagner "chitchatted" and appellant performed informal field sobriety tests at the request of Officer Wagner, the results of these tests were not admitted into evidence and, as stated above, when the State Police officers arrived they assumed control of the investigation. The officers independently observed appellant's obvious intoxicated state, elicited an admission appellant was indeed drinking, and conducted an official field sobriety test, which appellant failed.[2] It was only then that appellant was arrested.

¶ 10 That being said, we also find that despite Officer Wagner's arguable foray into a county not within his jurisdiction, thereby exceeding his authority, appellant's intoxicated state inevitably would have been discovered by the State Police who assumed responsibility for the investigation upon notification by Officer Wagner. It is on this basis, of the "doctrine of inevitable discovery", that we find appellant's challenge to the suppression court's ruling must fail.

¶ 11 The inevitable discovery doctrine, or independent source rule, states that illegally seized evidence may be admissible, "if the prosecution can demonstrate that the evidence in question was procured from an independent origin[.]" *Commonwealth v. Melendez*, 544 Pa. 323, 332, 676 A.2d 226, 230 (1996).

> Application of the "independent source doctrine" is proper only in the very limited circumstances where the "independent source" is truly independent from both the tainted evidence and the police or investigative team which engaged in the misconduct by which the tainted evidence was discovered.

*Id.*, quoting *Commonwealth v. Mason*, 535 Pa. 560, 573, 637 A.2d 251, 257–258 (1993) (emphasis in original). Applying the rule to this case, we find the evidence obtained by the State Police, to wit, evidence of appellant's intoxication, was independent of both Officer Wagner's actions in exceeding the bounds of his jurisdiction and performing the inappropriate field sobriety tests. "Even if the officer lacked the authority to awaken and detain the defendant, had he merely made observations and called the Pennsylvania State Police dispatcher, the Pennsylvania State Police Trooper would have obtained the same evidence." Suppression Court Opinion, Fornelli, J., 2/9/01, at 7, n. 1. *See also Smith, supra* (holding that while evidence from "the fruit of a poisonous tree" was suppressed, that same evidence obtained from an independent source (investigation) was admissible); *Commonwealth v. Ingram*, 814 A.2d 264 (Pa.Super.2002) (holding that marijuana, which otherwise should have been suppressed due to officers' failure to *Mirandize* defendant prior to interrogation, was not subject to exclu-

---

**2.** While the propriety of the field sobriety tests conducted by Officer Wagner is questionable, as stated, the results of that informal testing were not introduced into evidence. The later testing by the state police was not, therefore, tainted by the actions of Officer Wagner.

sion because it inevitably would have been discovered once the officer located the gun in appellant's waistband; a search of appellant's person incident to the arrest for the unlawfully possessed gun would have produced the drugs obtained). On this basis, we find the court correctly denied appellant's motion to suppress.

■ ¶ 12 Appellant next argues his motion for acquittal based on the sufficiency of the evidence should have been granted because the Commonwealth failed to establish he was in physical control of the vehicle.

■ ¶ 13 Our standard of review when considering a challenge to the sufficiency of the evidence is well settled.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof or proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. DiStefano*, 782 A.2d 574 (Pa.Super.2001), *appeal denied*, 569 Pa. 716, 806 A.2d 858 (2002 Pa.LEXIS 1921, 1930) (Pa. September 19, 2002) (citations and quotations omitted).

The most recent Superior court cases indicate that something more than a defendant behind the wheel, with the motor running, is required to establish actual physical control of the vehicle; there must be evidence to support an inference indicating that the vehicle had been driven by the defendant while he was intoxicated. A determination of actual physical control of a vehicle is based upon the totality of the circumstances, including the location of the vehicle, whether the engine was running and whether there was additional evidence indicating that the defendant had driven the vehicle prior to the arrival of the police.

*Commonwealth v. Saunders*, 456 Pa.Super. 741, 691 A.2d 946, 949 (1997) (citations omitted). Appellant was found guilty of violating section 3731(a)(4)(i) of the Vehicle Code which states, "[a] person shall not drive, operate or *be in actual physical control of* the movement of any vehicle in any of the following circumstances: ... (4) while the amount of alcohol by weight in the blood of (i) an adult is 0.10% or greater[.]" *Id.* (emphasis added). We find the evidence presented was sufficient from which the jury could conclude appellant was in physical control of his vehicle on the night in question.

¶ 14 At approximately 4:30 A.M., appellant was discovered slumped over in the driver's seat of his car with the engine running, headlights on, parked perpendicular to the road, poised as if to pull out into traffic. When investigating officers ar-

rived on the scene, appellant displayed visible signs of intoxication, and admitted he had driven a female acquaintance home after an evening of drinking. Appellant also failed a field sobriety test and was unaware of why he was sitting in his car in that particular parking lot of a closed retail store that, even when open, did not sell alcoholic beverages. It was apparent appellant had driven to that location after having imbibed. Such facts establish he was "in control of his vehicle", and provided the officers with probable cause to arrest him for suspicion of driving while intoxicated. We find the evidence presented, when viewed in the light most favorable to the Commonwealth, was sufficient to establish appellant was "in actual physical control" of his vehicle when discovered. *See Commonwealth v. Yaninas*, 722 A.2d 187 (Pa.Super.1998).

■ ¶ 15 Finally, appellant argues the trial court erred by denying his motion to dismiss for violation of Rule 600, **Prompt Trial**. Rule 600, formerly Rule 1100, requires the Commonwealth to bring a defendant, who is at liberty on bail, to trial within 365 days of the date on which the complaint is filed. Pa.R.Crim.P. 600(A)(3). Appellant raises two instances of delay that he contends are attributable to the Commonwealth thereby resulting in his being tried 387 days after his complaint was filed. The trial court found appellant was tried within 329 days.

Appellant's first area of concern deals with the November 15, 1999 to December 10, 1999 time period which the trial court failed to attribute to the Commonwealth. Judge Dobson specifically excluded this time from Rule 600 consideration. Appellant appeared at his initial

Preliminary Hearing on November 15, 1999 without an attorney to represent him, as is his constitutional right. However, District Justice Ruth French refused to let Appellant proceed without an attorney, as is her custom, and continued the hearing until December 10, 1999. Appellant argues this time, 25 days, should be attributed to the Commonwealth.

Appellant's brief at 22. Unfortunately for appellant, he failed to include this particular argument in his statement of matters complained of on appeal; therefore, it is waived. *See Commonwealth v. Butler*, 571 Pa. 441, 812 A.2d 631 (2002) (holding any issue not included in a 1925(b) statement will be deemed waived).[3]

■ ¶ 16 Appellant's second Rule 600 issue concerns the time period after he was denied ARD and when the Commonwealth placed him back on the trial list, from December 7, 2000 through January 9, 2001. Appellant argues his agreement to extend the 365 time period for 90 days after his petition for ARD was resolved, on October 5, 2000, became null and void when the Commonwealth immediately placed his case on the November, 2000 trial list following the denial of his application for ARD. We disagree.

¶ 17 The court concluded only 329 days were attributable to the Commonwealth. Findings of Fact, Motion to Dismiss, 2/18/02, at 4. As the trial court summarized,

[o]n June 16, 2000, defendant filed an ARD application wherein he agreed to extend the time within which he could be brought to trial for a period of 90 days after a determination was made on his

---

**3.** Moreover, at the time of the preliminary hearing, the Commonwealth was ready to proceed. The 25–day delay, which ensued as a consequence of the magistrate's decision to

postpone the hearing to allow appellant to secure counsel, cannot be attributable to the Commonwealth.

ARD application. The application was refused on October 5, 2000. The 90 day extension, therefore, would end on January 4, 2001. The case was placed on the November 2000 Trial List. The fact the Commonwealth timely placed the matter back on the trial list should not be held against it. Defendant agreed to the extension and he should be held to his agreement.

Trial Court Opinion, Dobson, J., 8/1/02, at 3–4. Appellant's application for ARD, signed June 16, 2000, specifically stated he agreed to a 90–day waiver subsequent to the possible denial or acceptance of the application. Appellant's brief at 34a. The court's Order of August 10, 2000 continued appellant's case for the purpose of consideration of his application for ARD and included a, "waiver of Rule [600] in this case pending a determination of his eligibility for the ARD program plus ninety days, and if accepted to the program, for the time he is in the program plus ninety days[.]" Record No. 11, Order, 8/10/00. The application was refused October 10, 2000 and appellant was scheduled for trial for the November and December trial terms. The period between October 6, 2000 and January 4, 2001 is excluded due to appellant's express waiver and the trial court's Order effectuating said waiver. Any delay occurring during this 90–day time period, therefore, cannot be attributed to the Commonwealth. Appellant's Rule 600 argument is without merit.

¶ 18 Having found each of appellant's arguments devoid of merit, we affirm the February 1, 2002 judgment of sentence.

¶ 19 Judgment of sentence affirmed.

¶ 20 MUSMANNO, J., concurs in the result.