J-A04033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ELENA MARCIA JAMES, | |
| Appellant | No. 1777 WDA 2014 |

Appeal from the Judgment of Sentence September 29, 2014
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0003909-2013, CP-02-CR-0003921-2013

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., and SHOGAN, J.

MEMORANDUM BY SHOGAN, J.:          **FILED MAY 2, 2016**

Elena Marcia James ("Appellant") appeals from the judgment of sentence entered in the Court of Common Pleas of Allegheny County on September 29, 2014.  We affirm.

The trial court summarized the factual history of this case as follows:

On March [14], [2012], at approximately 10:57 a.m., Captain Ronald Denbow of the Coraopolis Police Department received a call to respond to the nine hundred block of Fifth Avenue in Coraopolis by the Dollar General Store because there was an individual who was attempting to try car doors and get into those particular cars.  When he arrived at the scene, he found that [Appellant] was in the custody of a constable and after identifying [Appellant], they took her into custody and transported her back to the police station.  When they took her for processing, she was walking in front of Captain Denbow and Sergeant McGrady when she turned to them and said "which ones of yuns wants to die today?".  Officer Robert Litterini was escorting [Appellant] to be processed along with Captain

Denbow when he also heard her ask "which one of yuns wants to die today?" Both of these police officers took that as a threat.

On March 30, [2012], Officer Sean Quinn received a radio call from his partner, Officer Massey, that a female was standing in the middle of the roadway. When Officer Quinn went to aid his partner he discovered that the individual standing in the roadway was [Appellant]. She told the Officers that she was looking for her daughter who was either in Pittsburgh or New York. The Officers advised her to go home and make phone calls to try to locate her daughter. Based upon the fact that they were aware of [Appellant's] recent involvement with the police, the Officers decided to observe her and watched her walking back and forth to a bar. They then observed her going into a private driveway where she circled a white BMW three times, looking into the windows. She walked away from that car and went into another private driveway and attempted to open the door of a Blue Chevy pickup truck, however she was unsuccessful in doing that. She then went back to the BMW and attempted to open the door on that car, again being unsuccessful in her attempt to do so. The Officers then approached her and placed her under arrest. When conducting a pat down on her, they found a large kitchen knife that was in her waistband, that knife being anywhere [from] six to eight inches long and then found three steak knives in a backpack. When asked why she had these knives, she stated that she was going to stab somebody. The area in which they found [Appellant] was a residential area and they observed her go into several private driveways.

Trial Court Opinion, 6/16/15, at 3-4.

Appellant was charged at CC No. 201303909 with two counts of terroristic threats and one count of theft from a motor vehicle. At CC No. 201303921, Appellant was charged with two counts of possession of instruments of crime ("PIC"), two counts of criminal attempt – theft from a motor vehicle, and one count of prowling/loitering.

- 2 -

On June 26, 2014, Appellant proceeded to a jury trial on both criminal complaints. Following trial, Appellant was convicted of both counts of terroristic threats, but acquitted of theft from a motor vehicle at CC No. 201303909. At CC No. 201303921, Appellant was convicted of all five counts. A presentence report was ordered, and on September 29, 2014, Appellant was sentenced to two periods of probation of two years each, to be served concurrently. The trial court also ordered Appellant to undergo a Drug, Alcohol, and Mental Health Evaluation and to submit to random drug testing.

Appellant timely appealed. The trial court and Appellant complied with the requirements of Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

I. Was the evidence insufficient to sustain the two convictions for terroristic threats as [Appellant] did not intend to terrorize either officer?

II. Was the evidence insufficient to sustain the two convictions for attempted theft from a motor vehicle as failing to open a car-door handle is not a substantial step towards taking items from inside that vehicle?

III. Was the evidence insufficient to sustain the two counts of possessing instruments of crime as [Appellant] merely possessed kitchen knives and did not intend to employ them criminally?

Appellant's Brief at 6.

In all three of her issues, Appellant challenges the sufficiency of the evidence sustaining her convictions. Our standard of review when considering a challenge to the sufficiency of the evidence is well settled:

- 3 -

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof or proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Lehman**, 820 A.2d 766, 772 (Pa. Super. 2003).

In her first issue, Appellant argues that there was insufficient evidence to sustain the two convictions for terroristic threats at CC No. 201303909. Appellant's Brief at 16. Appellant asserts that she did not intend to terrorize Officers Denbow and Litterini. **Id.** Instead, Appellant maintains, "[t]he two questions that [Appellant] asked while handcuffed and following her arrest were nothing more than small expressions of frustration." **Id.** Appellant further contends that because the comments did not "seriously impair" security, the trial court erred in convicting her of the terroristic threats counts. **Id.**

Under 18 Pa.C.S. § 2706(a)(1), a person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a

threat to "commit any crime of violence with intent to terrorize another." 18 Pa.C.S. § 2706(a)(1). "[I]t is unnecessary for an individual to specifically articulate the crime of violence which he or she intends to commit where the type of crime may be inferred from the nature of the statement and the context and circumstances surrounding the utterance of the statement." *Commonwealth v. Hudgens*, 582 A.2d 1352, 1358 (Pa. Super. 1990).

We have provided the following explanation in consideration of the sufficiency of evidence to establish the crime of terroristic threat:

> "[T]he Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror." *Commonwealth v. Tizer*, 454 Pa.Super. 1, 684 A.2d 597, 600 (1996). "Neither the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense." *In re J.H.*, 797 A.2d 260, 262 (Pa.Super.2002). "Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security." *Tizer*, 684 A.2d at 600.
>
> Section 2706 "is not meant to penalize mere spur-of-the-moment threats which result from anger." *In re J.H.*, 797 A.2d at 262–63. *See also Tizer*, 684 A.2d at 600 (indicating statute is not meant to penalize spur-of-the-moment threats arising out of anger during a dispute); *Commonwealth v. Anneski*, 362 Pa.Super. 580, 525 A.2d 373 (1987) (concluding where defendant threatened to retrieve and use gun against her neighbor during argument, in which the neighbor also threatened to run over defendant's children with her car, did not constitute a terroristic threat because circumstances of the exchange suggested spur-of-the-moment threat made during heated exchange and defendant lacked a settled purpose to terrorize her neighbor). However, "[b]eing angry does not render a person incapable of forming the intent to terrorize." *In re J.H.*, 797 A.2d at 263. "[T]his Court must consider the

- 5 -

totality of circumstances to determine whether the threat was a result of a heated verbal exchange or confrontation." ***Id.***

***Commonwealth v. Reynolds***, 835 A.2d 720, 730 (Pa. Super. 2003).

Here, Captain Ronald Denbow provided the following testimony at trial:

> [Captain Denbow]:    I met [an officer] at the police station parking lot.  As we got [Appellant] out of the police vehicle, we were taking her up to the police station for processing.
>
> [Commonwealth]:    And what happened while you were taking her up for processing?
>
> [Captain Denbow]:    When taking her up for processing, she was walking in front of us and she turned around and said which one of younz wants to die today?
>
> [Commonwealth]:    Who did she state that to?
>
> [Captain Denbow]:    To both of us standing right there.
>
> [Commonwealth]:    What was your reaction to that?
>
> [Captain Denbow]:    I said excuse me and she said which one of younz want to die today.
>
> [Commonwealth]:    Did you have a personal feeling or reaction?
>
> [Captain Denbow]:    I took it serious in light of today's society.

N.T., 6/26/14, at 9-10.

Sergeant Robert Litterini also testified at trial.  Sergeant Litterini testified that on March 14, 2012, he escorted Appellant while she was at the police station.  N.T., 6/26/14, at 11.  Sergeant Litterini provided the following testimony:

[Commonwealth]:     Did [Appellant] make any statements to you?

[Sergeant Litterini]:    When escorting her into the station, she [asked] which one of us wanted to die today.

[Commonwealth]:     What was your reaction to that?

[Sergeant Litterini]:    Hesitant for a minute.  The Officer asked her again and what she said and she repeated which one of you wants to die today.

[Commonwealth]:     How did you take that?

[Sergeant Litterini]:    I took that as a threat.

N.T., 6/26/14, at 11-12.

We conclude that the totality of the circumstances presents sufficient evidence to sustain Appellant's conviction on the two counts of terroristic threats as to Sergeant Litterini and Captain Denbow.  As noted above, Appellant threatened the officers' lives while at the police station. Appellant's question of "which one of [you] wants to die today" can be fairly inferred as a threat.  Appellant's comments were made while she was being taken to processing and were not made during a heated exchange or confrontation.  Thus, the circumstances were not similar to those in **Anneski**, 525 A.2d at 373, where two neighbors were threatening each other with equally violent acts during a heated argument.  Additionally, it is of no relevance that Appellant was unable to immediately carry out the threat due to her being handcuffed, or whether the officers believed that the threat would be carried out, as these factors are not elements of the offense.

- 7 -

***Reynolds***, 835 A.2d at 730. Accordingly, we agree with the trial court's conclusion that the evidence viewed in the light most favorable to the Commonwealth was sufficient to sustain Appellant's convictions on the two counts of terroristic threats.

In her next issue, Appellant contends that the evidence was insufficient to convict her of criminal attempt-theft from a motor vehicle. Appellant's Brief at 25. Appellant asserts that she "unsuccessfully tried to open the doors of two vehicles, which did not constitute a substantial step towards taking items from either car." ***Id.*** Furthermore, Appellant maintains that "[t]here was no testimony that [her] actions were anything more than neurotic tics." ***Id.***

Criminal attempt is defined as follows: "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). Additionally, theft from a motor vehicle occurs when one "unlawfully takes or attempts to take possession of, carries away or exercises unlawful control over any movable property of another from a motor vehicle with the intent to deprive him thereof." 18 Pa.C.S. § 3934.

The evidence of record reflects that on March 30, 2012, Officer Shawn Quinn responded to a call regarding a woman, identified as Appellant, who was standing in the middle of the roadway in a residential area. N.T., 6/26/14, at 13. Officer Quinn was familiar with Appellant due to his

previous contact with her. *Id.* When Officer Quinn addressed Appellant, she told him that she was looking for her daughter. *Id.* The officers advised Appellant to go home and attempt to reach her daughter, and if she was unable to do so, to contact the police for a "welfare check." *Id.* Based on Officer Quinn's prior experience with Appellant, he positioned himself and other officers throughout the block so as to maintain view of Appellant. *Id.* at 13-14.

After the officers removed themselves from view, they observed Appellant walking "back and forth to the bar." N.T., 6/26/14, at 14. Officer Quinn subsequently saw Appellant return to his location and circle a white BMW automobile three times while peering into the windows of that vehicle. *Id.* Appellant proceeded to walk away from the BMW onto a private driveway where she attempted to open the door of a blue Chevy pick-up truck. *Id.* After being unsuccessful in opening the door to the Chevy truck, Appellant walked back to the BMW where she attempted to open the door of that vehicle. *Id.* at 14-15. At that point, the officers approached Appellant and placed her under arrest. *Id.* at 15.

In addressing Appellant's claim, the trial court provided the following analysis:

> The Commonwealth was required to establish that [Appellant] attempted to commit the crime of theft and did in fact, which constituted a substantial step toward the commission of that crime. Officer Quinn testified that he observed [Appellant] go to a BMW automobile, walk around that automobile three times looking into the automobile and then left that automobile and

- 9 -

went to a Chevrolet pickup truck and attempted to open the door, however, was foiled in her attempt since it was locked. Frustrated that she was unable to get into that car, she went back to the BMW and tried to open the door of that car, again to be frustrated since that door was locked. [Appellant] was in a residential neighborhood and went to private driveways to get into vehicles for which she had no authority to be in. The logical and reasonable inference drawn from her conduct was that she was attempting to take items of personal property from those vehicles, thereby constituting the crime of theft. Again, [Appellant's] testimony that she was looking for her daughter was found to be incredible in light of the actions that she was taking in a private residential area where she did not reside.

Trial Court Opinion, 6/16/15, at 9.

We agree with the trial court's conclusion that there was sufficient evidence to convict Appellant of attempted theft from a motor vehicle. Appellant continued her presence in the residential area after being advised by officers to leave the area. Appellant lapped the BMW automobile three times while looking in the windows of the vehicle. She attempted to open the doors to the Chevy pick-up truck and the BMW automobile. These actions support the conclusion that Appellant took substantial steps toward theft of items within the motor vehicles. Accordingly, Appellant's second claim lacks merit.

In her third issue, Appellant argues that the evidence was insufficient to sustain her two convictions for PIC. Appellant's Brief at 30. Appellant contends that the Commonwealth failed to present evidence sufficient to establish that she intended to employ the knives in her possession criminally. *Id.* Instead, Appellant maintains, she was merely in possession

- 10 -

of the knives. *Id.* She argues that because "she never used or attempted to use them in any way," her mere possession of the knives did not establish the requisite intent. *Id.*

The relevant provision of section 907 of the Crimes Code provides: "A person commits a misdemeanor of the first degree if he possesses a firearm or other weapon concealed upon his person with intent to employ it criminally." 18 Pa.C.S. § 907(b). A "weapon" is defined, in relevant part, as "[a]nything readily capable of lethal use and possessed under circumstances not manifestly appropriate for lawful uses which it may have." 18 Pa.C.S. § 907(d).

Here, the evidence reveals that when officers stopped Appellant on March 30, 2012, they placed her under arrest. N.T., 6/26/14, at 15. Officers conducted a search of Appellant's person pursuant to that arrest. *Id.* The search revealed a large, six-to-eight-inch kitchen knife that Appellant had concealed in her waistband in a "make-shift," "utility-type" belt. *Id.* at 15, 18. Upon discovery of the knife in Appellant's waistband, Appellant was searched for additional weapons, and officers discovered an additional three knives in the backpack Appellant had with her. *Id.* at 15-16. Officer Quinn testified that when he arrested Appellant and discovered the first knife, he asked Appellant why she had the knife concealed in her waistband. *Id.* at 16. In response, Appellant "stated that she was going to stab somebody." *Id.*

As outlined above, the evidence reflects that Appellant possessed a large six-to-eight-inch kitchen knife which she had concealed in her waistband. Appellant had also concealed an additional three knives in her backpack. Although the knives have lawful uses, they are readily capable of lethal use and here, the evidence suggests that they were "possessed under circumstances not manifestly appropriate for lawful uses," thereby satisfying the definition of "weapon." 18 Pa.C.S. § 907(d). Indeed, when asked why she had the knife, Appellant responded that "she was going to stab somebody." N.T., 6/26/14, at 16. Thus, the evidence of record supports the conclusion that Appellant intended to use the knives for criminal purposes. Viewing the evidence in the light most favorable to the Commonwealth, we conclude that the evidence was sufficient to establish that Appellant possessed weapons concealed upon her person with intent to employ them criminally. Accordingly, Appellant's final claim fails.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/2/2016