J-S81018-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JIQUAN BELL | |
| Appellant | No. 3787 EDA 2015 |

Appeal from the Judgment of Sentence November 22, 2011
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002010-2011

BEFORE:  BOWES, J., MOULTON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MOULTON, J.:                    **FILED MAY 09, 2017**

Jiquan Bell appeals from the November 22, 2011 judgment of sentence entered in the Philadelphia County Court of Common Pleas following his convictions for first-degree murder, criminal conspiracy, two counts of aggravated assault, carrying a firearm without a license, and possessing an instrument of crime.[1]  We conclude that the record does not contain sufficient evidence to support Bell's conspiracy conviction and therefore vacate that conviction.  We affirm the judgment of sentence as to the remaining convictions.

The trial court summarized the facts as follows:

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502, 903, 2702, 6106, and 907, respectively.

On June 22, 2010, Lamar Murphy and Hassan Polk met and rode their bikes up to the 1400 block of North Edgewood Street, Philadelphia. While Murphy and Polk were on Edgewood Street, Polk noticed a red car driving through the block approximately three times with multiple people in it, including [Bell].

At approximately 3:12 p.m., after the red car had passed the two boys again, [Bell], wearing a gray T-shirt, was standing on the corner of Edgewood and Media Streets. At this time, Murphy and Polk were on the sidewalk in front of 1438 Edgewood Street, while Murphy was talking to a friend across the street.

While Murphy was talking to his friend, Polk noticed [Bell] walking down the street towards them. [Bell] then pulled his shirt up to cover the bottom of his face, pulled out a gun while standing in the middle of the street, and began shooting at Murphy and Polk. [Bell], attempting to shoot Polk, fired his shot which struck Murphy in the head as Polk began to run away from [Bell]. [Bell] continued to shoot multiple times at Polk as he fled down the street, striking Polk once in the shoulder. Polk fled to 60th street where he then got a ride to Lankenau Hospital. [Bell], meanwhile, fled the scene towards Media Street.

Responding police officers arrived to find Murphy lying on the sidewalk with a gunshot wound to his head. Officers placed Murphy in the back of a police vehicle and transported him to the Hospital of the University of Pennsylvania, where he was pronounced dead at 3:39 p.m.

Police recovered a bullet fragment from the front door of 1425 North Edgewood Street. A bullet was also recovered from Murphy's body, which was compared to the bullet fragment recovered from the home. Subsequent forensic analysis established that both bullets were approximately .38 caliber in weight and were fired from the same weapon. No cartridge casings were recovered from the scene.

On July 13, 2010 and July 14, 2010, Donte Yarde and [Bell] were both incarcerated at the Youth Study Center. While there, Yarde overheard [Bell] talking to other youths about the tattoos on his face. [Bell] stated that he had a tear-shaped tattoo on his face because he had killed

- 2 -

"Lamar" while he had been intending to kill "Cheetah."[2] [Bell] stated that he "just walked down Edgewood [S]treet and started shooting," killing Murphy with the first shot and firing multiple times at Polk. Police subsequently interviewed Yarde, who identified [Bell] as the individual who stated he had shot at both Murphy and Polk. Polk also identified [Bell] to the police as the shooter during an interview.

Opinion, 2/8/16, at 2-4 ("1925(a) Op.") (footnotes and citations omitted). At trial, Raheem Henderson testified for the Commonwealth regarding the GPS tracking unit Bell had in place as part of his youth probation. *Id.* at 6. Henderson, who was in charge of the electronic monitoring of the GPS device, explained the GPA coordinates and stated that

[Bell] was located on the 1500 block of 57th Street at 3:02 p.m., at a time when [Bell] should have been at home on the 5500 block of Oxford Street. Five minutes later, at 3:07 p.m., [Bell] was located on the 1400 block of North 56th Street, further from home and in the immediate vicinity of where the shooting occur[r]ed. Another five minutes later, at 3:12 p.m., shortly after the shooting occurred, Henderson testified that [Bell] was on the 1600 block of North 56th Street, far removed from the shooting location and near his home. Henderson then testified that [Bell] remained in the area around his home until at least 3:29 p.m.

*Id.* (internal citations omitted).

Following a jury trial, the jury found Bell guilty of first-degree murder, criminal conspiracy, two counts of aggravated assault, carrying a firearm without a license, and possessing an instrument of crime. The trial court sentenced Bell to life imprisonment on the first-degree murder conviction

---

[2] "Cheetah" was Polk's nickname.

with no further penalty for the remaining charges. Bell filed a post-sentence motion, which the trial court denied on April 25, 2012.

On December 19, 2015, Bell timely filed a notice of appeal.[3] On appeal, Bell argues that the Commonwealth presented insufficient evidence to prove conspiracy to commit murder beyond a reasonable doubt. Bell's Br. at 36.[4]

When reviewing a sufficiency of the evidence claim, our task is to determine "whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Lehman*, 820 A.2d 766, 772 (Pa.Super. 2003), *aff'd*, 870 A.2d 818 (Pa. 2005) (quoting *Commonwealth v. DiStefano*, 782 A.2d 574 (Pa.Super. 2001)). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence," *Lehman*, 820 A.2d at 772 (quoting *DiStefano*, 782 A.2d at 574), and

---

[3] The trial court reinstated Bell's appellate rights *nunc pro tunc* on December 11, 2015 after this Court dismissed Bell's earlier appeal due to the failure of his counsel at the time to comply with an order to file a docketing statement.

[4] Bell's brief does not include a statement of questions involved pursuant to Pennsylvania Rule of Appellate Procedure 2116(a), but the argument section of his brief does address this issue. *See Commonwealth v. Stradley*, 50 A.3d 769, 771 n.2 (Pa.Super. 2012) (declining to find waiver when appellant failed to include a Statement of Questions Involved section, but raised issues in argument section of his brief, and stating "this omission does not impede our ability to address the merits of those issues").

"[a]ny doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Id.* "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Id.*

In applying the above test, we must evaluate the entire record. *DiStefano*, 782 A.2d at 582. Further, "the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Id.* "[W]e may not weigh the evidence and substitute our judgment for the fact-finder." *Id.*

To prove Bell was guilty of criminal conspiracy, the Commonwealth was required to establish that: (1) Bell "entered into an agreement to commit or aid in an unlawful act with another person or persons," (2) "with a shared criminal intent," and (3) "an overt act" was performed in furtherance of the conspiracy. *Commonwealth v. Weimer*, 977 A.2d 1103, 1105-06 (Pa. 2009); *see also* 18 Pa.C.S. § 903. This Court has stated that "[c]ircumstantial evidence may provide proof of the conspiracy. The conduct of the parties and the circumstances surrounding such conduct may create a 'web of evidence' linking the accused to the alleged conspiracy beyond a reasonable doubt." *Commonwealth v. Irvin*, 134 A.3d 67, 76 (Pa.Super. 2016) (quoting *Commonwealth v. Perez*, 931 A.2d 703, 708 (Pa.Super. 2007)). Further,

[a]n agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

*Id.* (quoting *Perez*, 931 A.2d at 708).

Bell claims that the Commonwealth presented insufficient evidence of conspiracy because it failed to establish an agreement between him and any alleged co-conspirator. He claims that: Polk never saw anybody exit the red car; after the shooting, Polk did not see the red car in the vicinity; no other witnesses testified to seeing a red car in the vicinity; and the Commonwealth did not arrest or interview any of the alleged co-conspirators. Bell maintains that "there is not a scintilla of evidence establishing an agreement between . . . Bell or anyone else to shoot and kill . . . Murphy and/or . . . Polk." Bell's Br. at 39. Finally, Bell claims that the conspiracy conviction is based on "pure speculation," that is, that Polk saw Bell in the back seat of a car when it drove by several times. *Id.* (emphasis omitted).[5]

_____

[5] To the extent Bell attempts to argue that there was insufficient evidence for the first-degree murder conviction, **see** Bell's Br. at 38 (stating "Bell never mentioned a motive for the shooting" and "assuming Bell is the gunman"), he has waived this claim. Bell neither raised this issue in his Pa.R.A.P. 1925(b) statement nor argued it in his brief. **See Commonwealth v. Johnson**, 985 A.2d 915, 924 (Pa. 2009) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."); **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998) ("Any issues not raised in a [Rule] 1925(b) statement will be deemed waived.").

The trial court rejected Bell's sufficiency claim, concluding that the

> evidence was sufficient for the jury to find that [Bell] had been in a car with multiple other individuals shortly before the shooting, that this car dropped [Bell] off somewhere near the intersection of Media and Edgewood Streets after circling the block several times, that [Bell] shot Murphy and Polk and then fled the scene, returning to a vehicle which then transported him home. Accordingly, there is ample evidence from which the jury could conclude that the driver of the car used by [Bell] to transport him to the crime scene and make his getaway thereafter conspired with [Bell] to shoot Murphy and Polk.

1925(a) Op. at 5-6. We disagree.

While Polk testified[6] that he saw a red car drive by the neighborhood three times, N.T., 12/21/11, at 58-59, and that at some point before the shooting he saw Bell in the back seat of the red car, *id.* at 93, he also testified that he did not see the car stop and did not see Bell exit the car. *Id.* at 118-119. Neither of the other two eyewitnesses, Jeanette Drayton and Saadiyah Jones, mentioned a red car. Furthermore, Drayton testified that minutes before the shooting took place, she saw Bell standing on a corner. N.T., 12/20/11, at 74-75. Jones testified that after the shooting occurred, Bell **ran** back in the direction he came from. *Id.* at 192. No witnesses testified that Bell exited the red car near the scene of the shooting, that the red car waited until he shot Murphy and Polk, or that he

---

[6] At trial, the trial court found Polk unavailable pursuant to Pennsylvania Rule of Evidence 804(a), and his preliminary hearing testimony was admitted at trial.

fled in that same car. Additionally, there was no evidence that the other occupants of the car knew that Bell was going to shoot Murphy and Polk. Notably, there was no evidence that these persons were located or interviewed.

Viewing the evidence in the light most favorable to the Commonwealth, there is simply insufficient evidence to establish that Bell entered into an agreement with anybody to commit the shooting. During its closing argument, the Commonwealth stated that Polk knew somebody was after him and, therefore, paid careful attention to how many times the red car passed by and to the car's occupants. N.T., 12/21/11, at 212. From this, the Commonwealth extrapolated that "it makes perfect sense, common sense that the people in the car would send somebody out of that car that [Polk] did not know." *Id.* That Bell conspired with someone in the red car is certainly possible. However, while conspiracies may be proven through circumstantial evidence, we cannot uphold a conviction based on mere possibility or "pure conjecture."[7] *See Commonwealth v. Farquharson*,

---

[7] All of the cases cited by the Commonwealth in support of its argument are distinguishable. Those cases, including *Commonwealth v. Weimer*, 977 A.2d 1103 (Pa. 2009), *Commonwealth v. Tejada*, 107 A.3d 788 (Pa.Super. 2015), *Commonwealth v. Poland*, 26 A.3d 518, (Pa.Super. 2011), *Commonwealth v. Lambert*, 795 A.2d 1010 (Pa.Super. 2002), *Commonwealth v. Tillery*, 611 A.2d 1245 (Pa.Super. 1992), and *Commonwealth v. Azim*, 459 A.2d 1244 (Pa.Super. 1983), all involved conspirators who acted in concert or were present at the scene, or included evidence that the getaway car driver knew the crime was being committed. *(Footnote Continued Next Page)*

354 A.2d 545, 550 (Pa. 1976). We conclude that the record does not contain sufficient evidence to support the conspiracy conviction.

Because the trial court did not impose further penalty for the conspiracy conviction, vacating the judgment of sentence for conspiracy does not affect the overall sentencing scheme and remand is not necessary. *See Commonwealth v. Lomax*, 8 A.3d 1264, 1268-69 (Pa.Super. 2010) (finding remand not required when vacating judgment of sentence would not disturb overall sentencing scheme).

Judgment of sentence for conspiracy vacated. Judgment of sentence affirmed as to the remaining convictions.

Judge Bowes joins in the memorandum.

President Judge Emeritus Stevens files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/9/2017

*(Footnote Continued)* ————————————

Here, in contrast, there was no evidence that Bell fled in the red car, or that the occupants of the car were present at the time of the shooting or knew of Bell's plans to shoot Murphy and Polk.