J-S63025-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA      IN THE SUPERIOR COURT OF
PENNSYLVANIA

Appellee

v.

FELIX VELASQUEZ

Appellant      No. 236 WDA 2017

Appeal from the Judgment of Sentence Dated December 21, 2016
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0000987-2016

BEFORE: BOWES, J., SOLANO, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY SOLANO, J.:      FILED DECEMBER 22, 2017

Appellant Felix Velasquez appeals from the judgment of sentence imposed following a jury trial at which he was found guilty of aggravated assault, criminal attempt – criminal homicide, recklessly endangering another person, carrying a firearm without a license, possessing an instrument of crime with intent to employ it criminally, robbery – threat of immediate serious injury, and terroristic threats with intent to terrorize another.[1] In this appeal, he contests whether the evidence was sufficient to convict him. We affirm.

On January 18, 2016, Nassir Al-Zamly purchased drugs from Appellant. N.T., 11/7/16, at 26-29, 31, 41, 56. The transaction had been arranged by a woman Al-Zamly knew as "Terran," who was later identified

_____

[1] 18 Pa.C.S. §§ 2702(a)(1), 901(a), 2705, 6106(a)(1), 907(a), 3701(a)(1)(ii), and 2706(a)(1), respectively.

as Terran Meserve. Al-Zamly had requested that the transaction take place outside his home on West 27th Street in Erie. Al-Zamly was an Oxycontin addict and agreed to purchase that drug from Appellant for $15 per pill. Meserve arrived at Al-Zamly's residence with Appellant, and Al-Zamly purchased ten pills. Al-Zamly and Appellant had never met before that drug transaction.

The next day, Al-Zamly was sitting in the driver's seat of his Chevrolet Malibu, which was parked outside his house, when Appellant appeared, opened the front passenger door of Al-Zamly's automobile, sat in the front passenger seat, demanded money from Al-Zamly, and shot him multiple times. N.T., 11/7/16, at 31-38, 46-50, 64. After being shot, Al-Zamly crawled out of his automobile, and Appellant exited the car, fired at Al-Zamly again, then fled to a burgundy Chevrolet Impala, and drove away. Al-Zamly suffered life-threatening wounds. Police never recovered the firearm. Trial Ct. Op., 3/13/17, at 1.

The shooting was witnessed by Justin Grzegorzewski, a letter carrier for the United States Postal Service, who was delivering mail in the neighborhood, but Grzegorzewski did not see the shooter's face. N.T., 11/8/16, at 9, 13.[2]

Al-Zamly was unable to identify Appellant from a photo lineup provided by the Erie Police Department, Trial Ct. Op., 3/13/17, at 1, but told

_____

[2] On January 19, 2016, Grzegorzewski was "cover[ing]" another letter carrier's route on what was originally intended to be "one of [his] days off." N.T., 11/8/16, at 10.

investigators that the man who had shot him was the same individual who had sold him drugs outside his home on the previous day. N.T., 11/7/16, at 51, 54; N.T., 11/8/16, at 83. He also informed police that the shooter had been driving a burgundy Chevrolet with a dent in the front bumper. N.T., 11/7/16, at 65-67. Al-Zamly gave Meserve's contact information to the police, and Meserve was able to identify Appellant in a photographic array. Commonwealth Ex. 4; N.T., 11/8/16, at 84.

Appellant's jury trial occurred on November 7 and 8, 2017. Appellant did not contest that the shooting occurred or that Al-Zamly was severely injured in the shooting, but he claimed that he was not the perpetrator. See Appellant's Brief at 17.

During the trial, Al-Zamly identified Appellant as the person who demanded his money and shot him. N.T., 11/7/16, at 54; Trial Ct. Op., 3/13/17, at 1. During his trial testimony, Al-Zamly acknowledged that he was addicted to Oxycontin, had purchased that drug illegally from Appellant, and had been unable to identify Appellant from a photographic array shortly after the shooting. N.T., 11/7/16, at 27-29, 54, 56. He also admitted that at the preliminary hearing, he had identified Appellant's car as a Chevrolet Malibu instead of a Chevrolet Impala. Id. at 66.

Al-Zamly's cellular telephone activity was admitted into evidence as Commonwealth Exs. 3A-3C; N.T., 11/8/16, at 7. Al-Zamly's cell phone had repeatedly sent calls and texts to a phone number registered to Appellant's mother.

Video footage of the shooting from a nearby store was admitted as Commonwealth Exhibit 2. N.T., 11/7/16, at 42; N.T., 11/8/16, at 72.[3] The video showed Appellant's vehicle parked on 27th Street on January 19, 2016. N.T., 11/7/16, at 43. The vehicle was a burgundy Chevrolet sedan with a silver hubcap on the front passenger-side wheel, no hubcap on the back passenger-side wheel, and a dent in the bumper. Id. at 44.[4] In the video, a man, whom Al-Zamly identified as Appellant while watching the video during his trial testimony,[5] is seen exiting the vehicle and walking off screen. Id. Minutes later, Appellant reappears on screen holding a firearm, stands next to his automobile, and shoots. Id. at 46. Then, the footage shows Appellant entering his car and departing. Id. at 45. Al-Zamly does not appear in the footage.

Grzegorzewski testified during the trial, but stated that he did not see the perpetrator's face and so could not identify Appellant. Trial Ct. Op., 3/13/17, at 1; N.T., 11/8/16, at 13.

Meserve testified that she brokered a drug deal between Appellant and Al-Zamly on January 18, 2016, and that she was responsible for introducing

_____

[3] The store was located at 2630 State Street in Erie. N.T., 11/7/16, at 72. There is nothing in the record indicating the distance between this address and Al-Zamly's home.

[4] About a month after the shooting, a burgundy Chevrolet Impala matching this description was located at the residence of Appellant's mother. N.T., 11/8/16, at 115.

[5] The video is not in the certified record. Appellant does not contest what can be seen on the video.

- 4 -

them. See generally N.T., 11/8/16, at 29-61. She identified Appellant in open court as the man who she brought to Al-Zamly's residence to sell drugs to Al-Zamly. Id. at 40. Meserve also testified that when she first spoke with police, she did not admit that she was at Al-Zamly's home in order to engage in a drug transaction. Id. After she "was in rehab" for her own drug addiction, she went to the police, "gave them the real reason [she] was there," "[t]old them that [she] facilitated the deal[,] and told them that [she] wanted to make any corrections to any documents or whatever that [she] may have signed." Id. at 40-41; see also id. at 30.

Detective Craig Stoker of the Erie Police Department, who was assigned to this case, N.T., 11/8/16, at 62, testified that he interviewed two "actual witnesses to the events," Justin Grzegorzewski and Lskaafi Mohammed. Id. at 71.[6] Detective Stoker admitted that neither Al-Zamly nor Mohammed could identify the shooter from a photographic array. Id. at 71, 111-12.[7] Mohammed did not testify at trial. Trial Ct. Op., 3/13/17, at 1. In addition, Detective Stoker testified that he did not recover a firearm

_____

[6] In the notes of testimony, the second witness's name is phonetically spelled as "Muhammad El-Kashee." N.T., 11/8/16, at 71. During trial, the Commonwealth asked Detective Stoker if Mohammed "was an eyewitness to this incident." Id. at 111. Appellant's counsel objected before Detective Stoker answered. Although the trial court overruled the objection, the Commonwealth never returned to this question and instead asked if Mohammed "did a photo lineup." Id.

[7] Al-Zamly, Meserve, and Mohammed were all shown the same photographic array. Commonwealth Ex. 4; N.T., 11/8/16, at 112. When asked if Mohammed was "able to pick out [Appellant] in that photo lineup," Detective Stoker answered, "Not with a hundred percent certainty, no, he did not." N.T., 11/8/16, at 112.

and did not obtain a warrant in order to search Appellant's mother's home where the burgundy Chevrolet Impala had been located. N.T., 11/8/16, at 115.

During closing arguments, defense counsel argued that there were discrepancies and inconsistencies in the evidence, focusing on Al-Zamly's failure to identify Appellant in the photographic array. Trial Ct. Op., 3/13/17, at 1.

Appellant was convicted on November 8, 2016, and sentenced on December 21, 2016, to 15-30 years' confinement. After the trial court denied his post-sentence motion on January 4, 2017, Appellant filed this timely appeal on February 3, 2017. On appeal, Appellant presents a single issue for our review:

> Did the Commonwealth present sufficient evidence of Appellant's identity as the perpetrator of the crime to sustain the convictions?

Appellant's Brief at 7.

"The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." Commonwealth v. Golphin, 161 A.3d 1009, 1018 (Pa. Super.), appeal denied, 170 A.3d 1051 (Pa. 2017). In implementing this test, this Court may not weigh the evidence and substitute its judgment for that of the fact-finder. Commonwealth v. Rahman, 75 A.3d 497, 501 (Pa. Super. 2013).

"[W]e note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." Commonwealth v. DiStefano, 782 A.2d 574, 582 (Pa. Super. 2001). Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Commonwealth v. Lehman, 820 A.2d 766, 772 (Pa. Super. 2003). "The Commonwealth may sustain its burden of proof or proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered." Id. "Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." Commonwealth v. Schoff, 911 A.2d 147, 159 (Pa. Super. 2006).

> Appellant argues, generally:
>
> At trial, the defense conceded that someone inflicted the gunshot wounds that resulted in Al-Zamly's hospitalization, however, it maintained that the evidence did not establish beyond a reasonable doubt that Appellant was the perpetrator. Specifically, Appellant points to Al-Zamly's inability to identify Appellant in a photo array during the police investigation. Moreover, two other eyewitnesses could not identify him, and the police never recovered the firearm.

Appellant's Brief at 17. Those "two other eyewitnesses" were Grzegorzewski, who "did not see the shooter's face," and Mohammed, who

"did not identify Appellant as the shooter." Id. at 21. Appellant only challenges his identification and does not allege that the Commonwealth presented insufficient evidence to satisfy the elements of any one particular crime. See Appellant's Brief at 17-21.

In its memorandum opinion, the trial court stated:

Appellant avers the guilty verdicts go against the sufficiency of the evidence because the victim, Nassir Al-Zamly, was unable to identify Appellant out of a photo lineup provided by the Erie Police Department; a witness, Justin Grzegorzewski, could not identify Appellant during trial; and because a firearm was not recovered. . . .

When viewed in a light most favorable to the Commonwealth as verdict winter, the evidence at trial was clearly sufficient to support the guilty verdicts in this case. . . . The issue of credibility as to identification was one for the jury to decide. . . . [I]t was for the jury to decide who to believe. As the trial transcript bears out, there was sufficient evidence, if believed, upon which a verdict of guilty could legally rest.

Trial Ct. Op., 3/13/17, at 1.

Viewing all of the evidence admitted at trial in a light most favorable to the Commonwealth as verdict winner, Golphin, 161 A.3d at 1018, we observe that during his trial testimony, Al-Zamly provided a detailed chronology of events and identified Appellant as the man who shot him. N.T., 11/7/16, at 27-29, 31-38, 46-47, 49-51, 54, 56, 64-67. Al-Zamly's testimony was corroborated by his cell phone records and by camera footage. Commonwealth Exs. 2 & 3A-3C. Meserve also confirmed that she had arranged for Al-Zamly and Appellant to meet for a drug transaction, and she identified Appellant from a photographic array and in open court as the

individual who sold drugs to Al-Zamly in her presence. Commonwealth Ex. 4; N.T., 11/8/16, at 40, 84-85; see also id. at 29-61.

We may not re-weigh the evidence or substitute our judgment for that of the jury. Rahman, 75 A.3d at 501. The jury weighed the fact that Al-Zamly was a drug addict and had engaged in an illegal drug transaction, which he admitted both to police during their initial investigation and during his trial testimony. N.T., 11/7/16, at 27-29, 51, 54, 56. The jury was also aware that, after the shooting, Al-Zamly had been unable to identify Appellant from a photographic array provided by the Erie Police Department, id. at 51, 54; Trial Ct. Op., 3/13/17, at 1, and misidentified Appellant's automobile as a Chevrolet Malibu instead of a Chevrolet Impala during the preliminary hearing, N.T., 11/7/16, at 66. Despite the conflicting evidence, the jury still chose to find Al-Zamly's in-court identification credible. Cf. Schoff, 911 A.2d at 159. Al-Zamly was able to tell police that his shooter was the same man who had sold drugs to him on the day before the shooting, and he identified Appellant in court. N.T., 11/7/16, at 51, 54; Trial Ct. Op., 3/13/17, at 1. Al-Zamly also testified that Appellant drove a distinctive vehicle, which was ultimately located at the home of Appellant's mother. N.T., 11/7/16, at 35-38, 44, 46-47, 65-67; N.T., 11/8/16, at 115. And even though police never recovered a firearm, Trial Ct. Op., 3/13/17, at 1, Al-Zamly testified that he saw Appellant holding a firearm, and the admitted camera footage showed Appellant holding and shooting a firearm. N.T., 11/7/16, at 31-35, 46, 49-50, 63-64; Commonwealth Ex. 2.

After a careful review of the evidence, we agree with the trial court that Appellant has not demonstrated entitlement to relief and thus affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/22/2017